**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3390
_____

MABLE S. JONES, MD,

Appellant

v.

TEMPLE UNIVERSITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-12-cv-05349)
District Judge:  Honorable Ronald L. Buckwalter
_____

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2015
_____

Before: CHAGARES, KRAUSE and BARRY, Circuit Judges

(Opinion Filed: August 13, 2015)
_____

OPINION[*]
_____


BARRY, Circuit Judge

        Dr. Mable S. Jones appeals the order of the District Court granting summary

_____
[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

judgment in favor of her former employer, Temple University, on her federal and state law claims of race and sex discrimination. We will affirm.

## I.

Dr. Jones is an African-American woman who was formerly employed by Temple University Hospital[1] ("Temple") as a neuroradiologist. She was hired by Temple in 2007 as a part-time physician on-call radiologist, paid at an hourly rate, having stated on her employment application that she was seeking a part-time position. In 2009, Dr. Jones was offered and accepted a salaried position as a neuroradiologist at Jeanes Hospital, a hospital for which Temple provided radiology services pursuant to contract. According to Temple, at that time Dr. Jones expressed a strong preference to work part-time. She was classified as an "8/10ths" employee, which enabled her to receive benefits despite not working full time.

Dr. Jones held a non-faculty position throughout her term of employment at Temple. Temple claims that there were no faculty positions available at the time Dr. Jones was hired, and, at Jeanes Hospital, there were no residents and therefore no faculty positions.[2] Because she was not a faculty member, her employment contract required only 90 days' notice prior to termination, while the employment contracts for faculty

[1] Temple University Hospital is part of Temple University of the Commonwealth of Pennsylvania System of Higher Education. The parties do not dispute that Temple is a state entity which acts under color of state law.
[2] Dr. Jones claims that she made numerous requests to teach, but her requests were not granted.

2

members required one year's notice.

Around the time Temple entered into a contract with Jeanes Hospital to provide radiology services, Temple's Chair of Radiology, Dr. Charles Jungreis, selected Dr. Larry Caputo, then Chairman of the Radiology Department at an affiliate of Methodist Hospital, as Chief of the Radiology Department at Jeanes, a full-time position. This chairperson position was not posted or publicly advertised, and no other candidates were interviewed. Dr. Jungreis testified that Dr. Caputo was selected based on his experience—twenty-nine years' experience as a radiologist and twenty years' administrative experience as chairman of the radiology department at his previous hospital—and strong recommendations from other Temple faculty members. After learning that Dr. Caputo had been selected, Dr. Jones expressed to Dr. Jungreis that she would have been interested in the position.

In 2009, Temple predicted a budget shortfall for fiscal year 2010, and Dr. Jungreis was informed that he needed to eliminate at least one position from the radiology department. Based on its evaluation methods, Temple determined that a neuroradiologist position should be eliminated based on an insufficient volume of work. At the time, there were eight neuroradiologists (Dr. Jones was the only African-American). Temple selected Dr. Jones's position for elimination because she was the only part-time, non-faculty neuroradiologist, rendering it easier for the remaining neuroradiologists to absorb her work and requiring only 90 days' notice prior to termination, and because Temple

3

was in the process of implementing a new system to allow neuroradiology films to be read remotely, lessening the need to have a neuroradiologist stationed at Jeanes Hospital. Dr. Jones was advised in January 2010 that her position would be eliminated in April, but ultimately her employment was extended, as Temple required additional time to implement its new remote reading system. She was terminated in October 2010. This lawsuit followed.

As is relevant here, Dr. Jones alleged in her complaint that Temple discriminated against her on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. §§ 951-63; and the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, when Temple failed to select her as Chief of Radiology at Jeanes Hospital and terminated her. On July 10, 2014, the District Court granted summary judgment in favor of Temple on all claims.

In a thorough and comprehensive opinion, spanning thirty-one pages, the District Court held that Dr. Jones failed to set forth evidence that Temple's legitimate, nondiscriminatory reasons for selecting Dr. Caputo, instead of her, as Chief of Radiology were a pretext for race or sex discrimination, and that Dr. Jones failed to establish a prima facie case of race discrimination[3] with respect to her termination, because there were no similarly situated employees outside of her protected class who were treated differently.

---

[3] Dr. Jones conceded at summary judgment that the evidence did not support a claim of sex discrimination with respect to her termination.

4

The Court also held that, even if Dr. Jones could establish a prima facie case with respect to her termination, she failed to offer any evidence that Temple's legitimate, nondiscriminatory reasons for her termination were a pretext for race discrimination.

On appeal, Dr. Jones argues that the District Court erred in granting summary judgment in favor of Temple because there were genuine issues of material fact in dispute as to whether the reasons stated by Temple for failing to select her as Chief of Radiology were a pretext for race and sex discrimination, whether she had established a prima facie case of race discrimination with respect to her termination, and whether Temple's reasons for terminating her were a pretext for race discrimination.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C §§ 1331 and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting summary judgment, applying the same standard as the district court. Mandel v. M&Q Packaging Corp., 706 F.3d 157, 164 (3d Cir. 2013). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. Mandel, 706 F.3d at 164.

## III.

Dr. Jones's claims under Title VII, section 1981, and the PHRA are all analyzed

under the "familiar burden-shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Under this framework, to establish a prima facie case of discrimination, a plaintiff must show that "1) [she] is a member of a protected class, 2) [she] was qualified for the position [she] sought to attain or retain, 3) [she] suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Mandel, 706 F.3d at 169 (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). The burden then shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." Makky, 541 F.3d at 214. When the employer articulates legitimate, non-discriminatory reasons for its employment action, the plaintiff, to survive summary judgment, "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To succeed on a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause, a plaintiff must show "proof of racially discriminatory intent or purpose" on the part of a state actor. Doe ex rel. Doe v. Lower Merion Sch. Dist., 665 F.3d 524, 543 (3d Cir. 2011) (internal brackets and quotation marks omitted). "The central purpose of the [Equal Protection] Clause is to prevent the States from purposely

6

discriminating between individuals on the basis of race." <u>Id.</u> (internal quotation marks omitted).

Dr. Jones has failed to submit any evidence from which a reasonable fact finder could conclude that her non-selection as Chief of Radiology was motivated by race or sex discrimination or that her termination was motivated by race discrimination. Temple claims that it did not select Dr. Jones as Chief of Radiology at Jeanes Hospital because it was a full-time position, and she had expressed a preference for part-time work, and because Dr. Caputo had many years of experience and strong recommendations from other physicians. Dr. Jones contends that Temple's stated reasons for her non-selection are not credible because Temple had a poor track record of hiring black physicians and because Dr. Jungreis failed to post the position (in violation of Temple policy), pursued Dr. Caputo to the exclusion of any other candidate, and contended that the position need not be posted because it was not a separate position. To defeat summary judgment, however, a non-moving plaintiff seeking to discredit an employer's proffered reasons for an adverse employment action "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" <u>See</u> <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 427 (3d Cir. 2013) (quoting <u>Fuentes</u>, 32 F.3d at 765). Dr. Jones has failed to do so. A reasonable fact finder simply could not conclude, from this evidence, that Temple's reasons for failing to select Dr.

Jones as Chief of Radiology are "unworthy of credence," and there is no evidence that Temple was motivated by discriminatory intent.[4]

With respect to Dr. Jones's termination, even assuming she could establish a prima facie case of discrimination (an issue seriously in doubt), she has failed to present evidence from which a reasonable fact finder could conclude that Temple's legitimate, nondiscriminatory reasons for her termination were a pretext for race discrimination. Temple contends that it decided to terminate a neuroradiologist because of an insufficient volume of work, and that it selected Dr. Jones for termination because she was stationed at Jeanes Hospital and Temple was in the process of implementing new technology which would permit films from Jeanes to be read remotely, and because Dr. Jones was a part-time, non-faculty employee with a shorter period of required notice prior to termination and a volume of work that could more easily be absorbed by others. Dr. Jones argues that a jury could find that Temple's stated reasons for her termination were pretextual because its measures of work and productivity were flawed, the implementation of the remote reading system was irrelevant, Temple erroneously concluded that she was not capable of providing certain types of readings, other radiologists could have been terminated instead of her, and Temple's reasons for terminating her shifted over time. Dr. Jones, however, "must do more than show that [Temple] was 'wrong or mistaken' in deciding to lay [her] off," to survive summary judgment. See Tomasso v. Boeing Co.,

---

[4] For purposes of Dr. Jones's non-selection claim, we assume without deciding, as did the District Court, that she stated a prima facie case of discrimination.

8

445 F.3d 702, 706 (3d Cir. 2006).  The issue is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  See Fuentes, 32 F.3d at 765.  Dr. Jones has presented no evidence to discredit Temple's legitimate nondiscriminatory reasons for her termination, and no evidence from which a fact finder could infer that Temple's actions were motivated by discriminatory animus.  See Burton, 707 F.3d at 430.  Her argument that Temple's reasons for terminating her shifted over time is unpersuasive and, as a factual matter, not supported by the record.

IV.

We will affirm the order of the District Court granting summary judgment in favor of Temple.