**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3091
_____

LAVAR DAVIS,
Appellant

v.

SOLID WASTE SERVICES, INC.,
T/D/B/A J.P. Mascaro & Sons


_____

On appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-12-cv-05628)
District Judge: Hon. Eduardo C. Robreno
_____

Submitted Pursuant to the Third Circuit L.A.R. 34.1(a)
March 20, 2015

Before: McKEE, *Chief Judge*, FUENTES, and RENDELL**, *Circuit Judges*

(Filed: August 20, 2015)
_____

OPINION*
_____

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

** The Honorable Marjorie O. Rendell assumed senior status on July 1, 2015.

FUENTES, *Circuit Judge*:

LaVar Davis appeals the District Court's order granting Solid Waste's motion for summary judgment. For the reasons that follow, we affirm.

I.

Davis, a black male, worked for six years as a truck driver for Solid Waste, a waste services company. Davis alleges that during his employment there, he and other black drivers were subject to discriminatory treatment, mostly at the hands of Solid Waste's General Manager Demetrio Macelak. Specifically, Davis alleges that black drivers were more likely than white drivers to be assigned to unsafe trucks, black drivers faced unfair disciplinary actions, and black drivers were often the targets of Macelak's abusive language. In November 2011, Solid Waste terminated Davis's employment, citing habitual tardiness and unexcused absences. Solid Waste's disciplinary records indicate that, in 2010, Davis was late 33 times with five unexcused absences and, in 2011, he was late more than 100 times with seven unexcused absences.

Davis and two other employees, Benjamin Gay and Thomas Johnson, filed separate suits against Solid Waste asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, among other claims. After these suits were consolidated, Solid Waste filed a motion for summary judgment, which the District Court granted.[1] The District Court first held that Davis failed to rebut Solid Waste's

---

[1] In the same order that granted Solid Waste's motion for summary judgment, the District Court also granted Solid Waste's motion to strike six declarations that the Plaintiffs had attached to their opposition to the summary judgment motion. In the District Court's view, the declarations violated 18 U.S.C. § 1746 because they were unsigned and did not

2

legitimate, nondiscriminatory reason for firing Davis, namely, his tardiness and absences. It next concluded that, while Solid Waste may not have fostered pleasant working conditions, there was no evidence of a hostile work environment for purposes of Title VII. Davis filed this appeal.[2]

## II.

## A.

Davis first argues that he was fired in violation of Title VII. To establish a prima facie discrimination claim under Title VII, a plaintiff must show that he is a member of a protected class, he is qualified for the position, he suffered an adverse employment action, and that the surrounding circumstances give rise to an inference of discrimination.[3] Under the *McDonnell Douglas* burden-shifting framework, if a plaintiff makes a successful prima facie claim, "the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for the action."[4] If the defendant offers such a reason, the burden of production shifts back to the plaintiff to show the defendant's explanation was a pretext for discrimination.[5]

---

contain a statement that they were true under penalty of perjury. The District Court acted within its discretion in disregarding the statements in these declarations. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005).

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Our jurisdiction is based on 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment and will affirm only if, "viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion, we conclude that a reasonable jury could not rule for the nonmoving party." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015).

[3] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

[5] *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013).

Like the District Court, we will assume Davis has established a prima facie case of discrimination. The burden thus shifts to Solid Waste to offer a legitimate reason for firing Davis. Solid Waste has easily satisfied that burden here. Its attendance records show that, in the two years prior to his termination, Davis had 12 unexcused absences and was late more than 130 times. Davis received several warnings about these attendance issues, but his tardiness and absences continued unabated and in violation of company policy.[6] The burden of production therefore returns to Davis to demonstrate pretext—a burden Davis fails to carry. Indeed, Davis's appellate brief ignores the burden-shifting framework entirely. He does not offer any reason to doubt Solid Waste's articulated justification for his dismissal. Moreover, at his deposition, Davis acknowledged being late to work a "large number of times." Accordingly, we agree with the District Court that Davis has offered no evidence from which a factfinder could reasonably conclude that Davis's termination was the result of racial animus.

B.

Davis's next argument under Title VII is that Solid Waste is liable for creating a hostile work environment. To establish this claim, a plaintiff must show, among other things, he suffered severe or pervasive discrimination on the basis of race.[7] The relevant inquiry is not whether an employee's workplace was generally hostile or abusive, but

---

[6] *Henderson v. Nutrisystem, Inc.*, 634 F. Supp. 2d 521, 531-33 (E.D. Pa. 2009) (violating an employer's attendance policy is a legitimate and nondiscriminatory reason for termination).
[7] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

4

whether the hostility was driven by intentional discrimination.[8] Because such an environment must be severe or pervasive, isolated incidents or comments are generally insufficient to state a claim.[9]

In advancing his claim, Davis first argues that black drivers were disproportionately assigned to operate four unsafe trucks known as FE-99, FE-104, FE-116 and CT-15. He relies on Solid Waste's truck logs, which indicate that in 2011, black drivers were assigned to one of these trucks, FE-116, a total of 86 times, while white drivers were assigned to the same truck 69 times. Davis also points to the deposition testimony of Benjamin Gay, who stated he believed black drivers were more likely than white drivers to be assigned to these dangerous trucks. Solid Waste responds that all drivers were assigned to newer and older vehicles alike. The four trucks identified by Davis, it adds, were spares that were used only when no other trucks were available. Moreover, Solid Waste's records demonstrate that, in the year prior to his termination, Davis drove FE-116 only five times and FE-99 only 21 times; there is no evidence that Davis ever drove FE-104; and, Davis testified that he refused to operate CT-15 because he believed it was unsafe. Davis's primary vehicle during this time was FE-121, which he drove 128 days between May and November 2011.

We agree with the District Court that Davis has failed to show that Solid Waste's truck assignments support a hostile work environment claim. The scant statistical evidence Davis adduces regarding one truck does not overcome the absence of other

---

[8] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).
[9] *See Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

evidence of discrimination with respect to the truck assignments. Further, because Davis rarely used any of the four unsafe trucks, these assignments were not severe or pervasive. Nor has Davis explained how he was "detrimentally affected" by driving these trucks occasionally.[10] Davis also was never disciplined for refusing to operate a vehicle due to a safety concern.

Next, Davis argues that black drivers were disproportionately disciplined for misconduct. Davis relies exclusively on Gay's testimony that Solid Waste did not reprimand three white drivers who damaged company equipment. Beyond this bare assertion, Davis offers no evidence to support his claim that drivers of different races faced different disciplinary decisions. And, Davis does not argue that he was ever punished for something for which a similarly situated white driver was not punished. Davis's unsubstantiated contention about Solid Waste's disciplinary actions does not support a hostile work environment claim.

Finally, Davis argues that Macelak targeted black drivers with his abusive and profanity-laced language. Davis points to Gay's testimony that during monthly meetings Macelak often looked at black drivers when going off on his tirades. Gay also testified that he overheard someone who sounded like Macelak using a racial slur to describe President Obama. Notably, however, Davis does not point to any evidence of Macelak ever personally targeting him in a discriminatory fashion. In any event, these types of

---

[10] *Mandel*, 706 F.3d at 167.

indirect, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim.[11]

While Davis arguably has provided some evidence of unsafe working conditions, unfair disciplinary decisions, and an unprofessional boss, Title VII is not concerned with these issues. To support his claim of a hostile work environment, he was required to, but did not, produce evidence of intentional discrimination that was severe and pervasive. Accordingly, viewing the record in the light most favorable to Davis, we hold that his hostile work environment claim fails as a matter of law. [12]

III.

For these reasons, we affirm the District Court's order granting Solid Waste's motion for summary judgment.

---

[11] *Caver*, 420 F.3d at 262 (holding isolated incidents and offhand comments do not create a discriminatory environment that is severe or pervasive).
[12] The District Court also dismissed Davis's claims for violations of the United States and Pennsylvania constitutions, as well as his claim for intentional infliction of emotional distress. Although Davis does not address these issues on appeal, we agree with the District Court that these claims are without merit.