**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-3193

———————

SHANNON J. MANDEL,

Appellant

v.

M&Q PACKAGING CORP.,
A Subsidiary of M&Q Plastic Productions, Inc.

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-09-cv-00042)
District Judge: Honorable A. Richard Caputo

———————

Argued on April 26, 2012

Before: GREENAWAY, JR., ROTH and TASHIMA*,
Circuit Judges

(Opinion filed: January 14, 2013)

Jeffrey R. Elliott, Esquire
Joan E. London, Esquire **(Argued)**
Michael M. Monsour, Esquire
Kozloff Stoudt
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA  19610

       Counsel for Appellant


Catherine T. Barbieri, Esquire **(Argued)**
Steven K. Ludwig, Esquire
Fox Rothschild
2000 Market Street, 20th Floor
Philadelphia, PA  19103

       Counsel for Appellee

------

    *Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

Gail S. Coleman, Esquire **(Argued)**
Equal Employment Opportunity Commission
Room 5SW24L
131 M Street, N.E.
Washington, D.C. 20507

Counsel for Amicus in support of Appellant

O P I N I O N

**ROTH**, Circuit Judge:

Shannon J. Mandel appeals the final judgment of the District Court entered on July 25, 2011, following the grant of summary judgment in favor of defendant M&Q Packaging Corporation. For the reasons that follow, we will affirm the judgment of the District Court with respect to the retaliation claims, the PHRA claims, and the Title VII sex discrimination claims. We will reverse the District Court's grant of summary judgment on the Title VII hostile work environment and constructive discharge claims and remand the case for further proceedings in accordance with this opinion.

## I. BACKGROUND

### A. Factual Background

On October 25, 1996, Shannon J. Mandel was hired as an Inside Sales and Customer Relations Coordinator by M&Q Packaging Corporation (M&Q), which manufactures and sells

packaging film. Mandel claimed that, throughout her employment from October 25, 1996, to May 23, 2007, she was sexually harassed and discriminated against by male managers, supervisors, and owners in alleged incidents such as being referred to as "woman," "darling," "the woman," "fluffy," "missy," "hon," and "toots"; having her body, clothing, and physical appearance commented on; being told that she was "foolish not to use [her] assets"; being told by Systems Manager David Benetz, when she asked for directions to a meeting at corporate headquarters, that "[f]or you . . . the meeting will start at my house tonight and we will conclude our part of it tomorrow morning – maybe . . . we may need to postpone the meeting with everyone else a few hours to finish up . . ."; being told by Quality Manager Harold Brenneman that he fantasized about her while he was having sex with his wife; being told in a review by Managing Director (and later President & COO) Michael Schmal that she was "too female" and "too emotional"; being solicited for dates by Vice President of Sales Curt Rubenstein even after she told him she was not interested; being told to clean the bathroom and make coffee when male employees were not asked to perform such tasks; and being paid less and given less vacation time than a male manager.

Mandel reported to George Schmidt from October 25, 1996, until 1998 or 1999, to Vice President Jack Menges until February of 2006, and finally to Schmal until May 23, 2007. Mandel contends that Schmal, Department Manager Larry Dahm, Plant Manager Ernest Bachert, and Human Resources Manager Jack Conway also reported to Menges during the same time period and were her peers. Neither Menges nor Schmidt ever harassed Mendel.

4

On April 6, 2007, during a meeting regarding sample orders, Bachert became angry, repeatedly called Mandel a "bitch," and screamed "shut the fuck up." Bachert had previously referred to Mandel as a "bitch," both in and out of her presence. As a result of the meeting, Mandel resigned on May 23, 2007, by submitting a letter with two weeks' notice to Schmal. When Mandel resigned from M&Q, she accepted a position with Yuengling.

In her resignation letter, Mandel did not complain of harassment or discrimination, apparently because she was concerned she would be denied her vacation time. She did, however, refer to the Employee Handbook. The Employee Handbook included an Equal Employment Opportunity Policy, which informed employees that they should contact the personnel manager—in this case, Conway—if they felt they were being discriminated against. The Employee Handbook also included an Open Door policy, which directed employees to discuss any issues first with their supervisor and then with the personnel manager. Mandel testified in her deposition that she understood the policies in the Employee Handbook but felt uncomfortable going to Conway or Schmal with her complaints. Conway testified in his deposition that other than giving each employee a copy of the Employee Handbook, there was no training regarding discrimination or sexual harassment.

Although Mandel complained to Schmidt about being told to make coffee, she did not complain to her supervisors about other alleged incidents of harassment or discrimination. Mandel occasionally used profanity and sent emails containing sexual humor. Mandel also called Bachert "gay" on a few occasions, apparently as a joke in reference to

5

jealous husbands who claimed Bachert made advances to their wives. Mandel was never disciplined during her employment with M&Q.

## B. Procedural History

Mandel completed Equal Employment Opportunity Commission (EEOC) questionnaires (dated July 17, 2007), which were received by the EEOC on September 13, 2007. On the questionnaires, Mandel checked boxes indicating "I want to file a charge." The EEOC processed the forms and issued a Charge of Discrimination (Charge) on December 14, 2007. That same day, Mandel requested that the Charge be dual filed with the Pennsylvania Human Relations Commission (PHRC). On October 21, 2008, the EEOC issued a Dismissal and Notice of Rights, indicating "the EEOC is unable to conclude that the information obtained establishes violations of the statutes" and informing Mandel of her right to sue within 90 days of receipt.

On January 9, 2009, Mandel filed a Complaint against M&Q, alleging gender-based discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Counts I and II), and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 *et seq.* (Count III), as well as intentional infliction of emotional distress in violation of Pennsylvania law (Count IV).

On August 18, 2009, the District Court partially granted M&Q's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The District Court found that Mandel had failed to exhaust her administrative remedies because she indicated on

the EEOC questionnaires that she did not take action for fear of reprisal and thus any claim of retaliation was not encompassed in the EEOC Charge. The District Court also found that the allegations did not constitute the type of "clearly disparate and ultra extreme conduct" actionable under an intentional infliction of emotional distress claim. The District Court, therefore, dismissed Counts I, II, and III to the extent they alleged claims of retaliation and dismissed Count IV in its entirety.

On July 25, 2011, the District Court granted M&Q's motion for summary judgment on all remaining claims. The District Court excluded evidence of certain alleged incidents because Mandel did not testify to them in her deposition, although she discussed them in her EEOC questionnaires. The District Court found all of Mandel's claims under the PHRA time barred, as well as all claims under Title VII for incidents that occurred prior to November 17, 2006. The District Court then considered the remaining incidents on the merits and granted summary judgment in favor of M&Q.

Mandel appealed, and the EEOC filed an *amicus* brief.

## II. <u>DISCUSSION</u>

### A. Motion to Dismiss

Mandel argues that the District Court erred in granting M&Q's motion to dismiss all claims of retaliation. We exercise plenary review of an order granting a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Newman v. Beard*, 617 F.3d 775, 779 (3d Cir.

7

2010). We accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Id.*

A plaintiff "must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue. *See id.* at 1020-21. The same is required to bring a claim under the PHRA. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). A plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

Mandel contends, as she did before the District Court, that she was constructively discharged due to intolerable work conditions after she complained of sex discrimination and sexual harassment. The District Court found that the retaliation claims were not within the scope of the Charge, explaining that although there was "substantial factual overlap" between the Charge and the Complaint, they contradicted each other on the facts supporting the retaliation claims. In particular, the District Court noted:

Plaintiff's complaint alleges she took action by complaining to the general manager and suffered consequent reprisal. Her EEOC charge indicates that she did not take action for fear of reprisal. It cannot reasonably be expected that the EEOC's investigation would encompass a claim of retaliation for engaging in statutorily protected activity where Plaintiff's charge states that she refrained from activity that might be protected, nor is there any indication that a retaliation claim was in fact investigated.

The District Court correctly concluded that the factual statement in support of the Charge did not encompass claims of retaliation. Mandel herself concedes that the box for retaliation was not checked on the Charge. Mandel urges this Court to construe the Charge liberally, however, because it "is nearly always drafted by a non-lawyer." "[A]n unsophisticated, inartfully drafted Charge" should not be dispositive of a plaintiff's rights. Such an argument is inapt here because Mandel, even as a non-lawyer, could have easily checked the box for retaliation on the Charge but failed to do so. She also failed to allege any retaliatory conduct in the Charge. When asked in the questionnaires whether she had reported the alleged harassment to her employer, she responded "no" and again failed to check the box for retaliation. Because Mandel failed to exhaust her remedies for any claims of retaliation, we will affirm the District

9

Court's dismissal of Counts I, II, and III to the extent that they allege claims of retaliation.

## B. Motion for Summary Judgment

Mandel appeals the District Court's grant of summary judgment in M&Q's favor on the PHRA claims, the Title VII hostile work environment claim, and the Title VII sex discrimination claims. We review the District Court's grant of summary judgment *de novo* and apply the same standard as the District Court. *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 275 n.7 (3d Cir. 2011). "Summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.*

### 1. PHRA Claims

To bring suit under the PHRA, an administrative complaint must first be filed with the PHRC within 180 days of the alleged act of discrimination. 43 Pa. Cons. Stat. § 959(h). The District Court found all PHRA claims time barred, reasoning that more than 180 days had passed from Mandel's resignation on May 23, 2007, to her cross-filing of a complaint with the PHRC on December 14, 2007.

Mandel contends that the 180-day period should instead be calculated from September 13, 2007, the date on which the EEOC received her questionnaires. The District Court rejected that argument, explaining that "the filing of a charge with the EEOC *in itself* is not sufficient to comply

10

with the PHRA." We have previously addressed dual filing with the EEOC and the PHRC, explaining:

> [T]he worksharing agreement [which divides responsibility for processing claims that have been dual filed with both the EEOC and the PHRC] allows a plaintiff to proceed in court under Title VII without first filing with the PHRC. That, however, does not mean that a plaintiff can initiate PHRC proceedings as required by the PHRA merely by filing with the EEOC. Whether a plaintiff has initiated PHRC proceedings under the PHRA is a state law issue. . . . EEOC procedures are not a sufficient surrogate for PHRC remedies.

*Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997) (footnotes omitted). The District Court correctly concluded, therefore, that "the mere filling out of an EEOC charge information questionnaire cannot be in itself sufficient to comply with the PHRA." Moreover, as the District Court noted, the questionnaires did not contain any indication of dual filing. Mandel further argues that the 180-day period should be enlarged to 300 days because Pennsylvania is a "deferral state." The District Court agreed that Pennsylvania is a "deferral state" and thus the statute of limitations for the Charge was extended to 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (defining time for filing a charge as 180 days,

11

enlarged to 300 days where the complainant initially instituted state proceedings).  The District Court properly rejected Mandel's argument, however, because the 300-day extended statute of limitations applies only to the Charge, not to the PHRA filing.  *See id.*  We conclude that Mandel's PHRA claims are time barred and thus affirm the District Court's grant of summary judgment in M&Q's favor on the PHRA claims (Count III).

### 2. Title VII Claims

Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

### a. Statute of Limitations

To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  A discrete act in itself constitutes a separate actionable unlawful employment practice.  *Id.* at 114.

12

Discrete acts include, for example, "termination, failure to promote, denial of transfer, or refusal to hire."[1] *Id.*

Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Morgan*, 536 U.S. at 105 (explaining court may consider "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period")). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" and "cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115-17. To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period. *See Morgan*, 536 U.S. at 122; *see also West v. Phila. Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir. 1995) (explaining plaintiff must show that at

---

[1]Mandel does not appeal the District Court's correct determination that her claim alleging failure to promote in 2006 was a discrete act that was time barred because it occurred prior to February 18, 2007 (i.e. 300 days prior to the filing of the Charge on December 14, 2007). *See Morgan*, 536 U.S. at 114. The District Court later found that the EEOC questionnaires filed September 13, 2007 tolled the statute of limitations and thus her claims would not be time barred if they occurred after November 17, 2006.

13

least one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination").

Prior to the decision of the Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), we had adopted from *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983), a non-exhaustive list of three factors to aid in distinguishing between the occurrence of isolated acts of discrimination and a persistent, ongoing pattern. In particular, our opinions in *West v. Philadelphia Electrical Co.*, 45 F.3d 744 (3d Cir. 1995), and *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir. 1997), contained dicta explaining that the Fifth Circuit Court of Appeals considered the subject matter,[2] frequency, and degree of permanence[3] of the underlying acts to distinguish continuing violations from isolated occurrences.[4] *See West*, 45 F.3d at 755 n.9 (discussing *Berry*, 715 F.2d at 981); *see also Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481-82 (3d Cir. 1997) (same). Citing *West*, the District Court applied the *Berry* factors and determined that Mandel's claims met the subject

---

[2]We have defined subject matter as whether the violations constitute the same type of discrimination.

[3] We have defined permanence as whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

[4] We note that Mandel conceded on appeal that this three-factor analysis applies, but we find persuasive the EEOC's argument to the contrary and write to clarify the continuing violation doctrine following *Morgan*.

14

matter and frequency requirements but failed the permanency requirement because Mandel should have been aware of the need to assert her rights but "did not pursue her claim with reasonable diligence, and thus she is precluded from using the continuing violation theory."

Following *Morgan*, however, permanency is not required to establish a continuing violation:

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days 'after' the single unlawful practice 'occurred.' Given, therefore, that the incidents constituting a hostile work environment are part of one

15

> unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan*, 536 U.S. at 117-18. It is clear that there is no longer a permanency requirement under the continuing violation doctrine and that the Supreme Court's decision in *Morgan* thus supersedes our opinions in *West* and *Rush* to the extent that we adopted *Berry*.

Having clarified our continuing violation doctrine following *Morgan*, we find that Mandel may proceed under a continuing violation theory. Mandel has alleged at least one act that falls within the statute of limitations (i.e. Bachert calling her a "bitch" during a meeting), and many of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern. We will, therefore, remand the case to the District Court for further proceedings, including a determination of the scope of the incidents properly considered part of the continuing violation for the hostile work environment claim.

Furthermore, to address the concern that a plaintiff might "unreasonably" delay filing a charge, *Morgan* explained that employers would have recourse, including equitable defenses such as laches. *Morgan*, 536 U.S. at 121-22. M&Q raised the doctrine of laches as a defense, but the

16

District Court did not consider it. In light of our clarified doctrine, M&Q should be given an opportunity to argue the laches defense, and the District Court should consider whether it applies.

### b. Hostile Work Environment

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The first four elements establish a hostile work environment, and the fifth element determines employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

As a threshold matter, the District Court must reexamine the scope of the incidents that are part of the continuing violation before the hostile work environment claim may be evaluated. We will, therefore, reverse the grant of summary judgment on the hostile work environment claim and remand for further proceedings. In doing so, we briefly address two evidentiary concerns and several of the elements

17

of the hostile work environment claim that were heavily contested on appeal. We also note that the parties do not dispute the District Court's finding that Mandel satisfied the first element because she had presented "sufficient evidence from which a reasonable jury could infer that the alleged harassment was based on her sex."

### i. Scope of Evidence

First, so-called "me too" evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible. *Spring/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Rather, the question of whether evidence of discrimination against other employees by other supervisors is relevant is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case. *Id.* We "afford broad discretion to a district court's evidentiary rulings." *Id.* at 384. We find that the District Court properly excluded the so-called "me too" evidence, which consisted of the deposition testimony of two former employees of M&Q Plastic Products, Inc., because the two employees were not employed by defendant M&Q Packaging but by defendant's parent corporation.

Second, the EEOC argues that the District Court erred by disregarding three specific instances of harassment that Mandel listed in her signed Charge but did not testify to in her deposition because the Charge is a sworn statement, signed under the penalty of perjury, and thus should be regarded as more than "bare assertions" or "conclusory allegations." Because an affidavit attached to a signed EEOC charge may raise genuine issues of material fact, *see Liotta v.*

18

*Nat'l Forge Co.*, 629 F.2d 903, 907 (3d Cir. 1980), the District Court erred in excluding those incidents. On remand, the District Court should consider whether those three incidents are part of the continuing violation.

### ii.  **"Severe or Pervasive"**

To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). The District Court summarized the alleged incidents and concluded that "none of the alleged incidents is sufficiently severe to establish a hostile work environment." The District Court's reasoning suggests that it improperly parsed out each event and viewed them separately, rather than as a whole. On remand, the District Court must consider the totality of the circumstances, rather than parse out the individual incidents, to determine whether the acts that collectively form the continuing violation are severe or pervasive.

### iii.  **"Detrimentally Affected"**

We agree with the District Court that an objectively reasonable person in Mandel's place might be offended by the alleged incidents. We are troubled, however, by the District

Court's conclusion that Mandel failed to show that she was detrimentally affected by the alleged incidents:

> Here, Mandel only complained about one of the alleged incidents (Bachert's name calling), and she complained to a friend at work and not a supervisor. Further, she has presented no evidence that she had any psychological distress or that her ability to perform her job was impaired. Finally, the record contains evidence that Mandel actively participated in creating a work environment in which vulgarity and sexual innuendo were commonplace. Mandel's use of explicit language and her e-mails involving ongoing sexual jokes demonstrate a casual ease with this type of workplace behavior. The use of sexual humor does not on its own demonstrate that Mandel is incapable of being offended by degrading comments, but when combined with a lack of evidence of any subjective distress, a reasonable jury could not find that Mandel has proven that the harassment had a detrimental effect on her.

Although Mandel engaged in certain unprofessional conduct, the comments and conduct to which she was subject were often worse and apparently uninvited. Mandel complained about being told to make coffee, and although she did not complain to her supervisors about the other alleged incidents, there is some evidence that she complained to other employees. She also resigned shortly after Bachert called her a "bitch" during a meeting and alleged in her sworn EEOC Charge and questionnaires that she was detrimentally affected. A jury could reasonably conclude that Mandel did not invite these comments or conduct and that, despite her own conduct, was offended by them. Because the inherently subjective question of whether particular conduct was unwelcome presents difficult problems of proof and turns on credibility determinations, the District Court erred in granting summary judgment.

### iv. *Respondeat Superior* Liability

The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker. *Huston*, 568 F.3d at 104. Because the District Court concluded that Mandel failed to establish a hostile work environment, it did not reach the question of employer liability. There is an inadequate record before us on appeal from which to determine whether *respondeat superior* liability exists. Because we reverse and remand for further proceedings on the hostile work environment claim, we leave the issue to the District Court to determine on remand.

21

In sum, permanency is not required to show a continuing violation following *Morgan*, and we thus reverse the District Court's grant of summary judgment on the Title VII hostile work environment claim (Count II) and remand for further proceedings.

### c. Sex Discrimination

To prevail in a sex discrimination claim under Title VII, a plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). A plaintiff must show that "1) s/he is a member of a protected class, 2) s/he was qualified for the position s/he sought to attain or retain, 3) s/he suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

The parties do not dispute that Mandel is a member of a protected class based on her sex or that she was qualified for her position. Rather, Mandel contends that the District Court erred by finding that she was neither constructively discharged nor subject to disparate treatment regarding wages and career opportunities.

### i. Constructive Discharge

Mandel contends that the meeting during which Bachert called her a "bitch" caused her to resign, resulting in a constructive discharge. To establish a constructive discharge, Mandel must show that "the employer knowingly

22

permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996). We employ an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992). In determining whether an employee was forced to resign, we consider a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010).

The District Court concluded that Mandel failed to prove a hostile working environment and thus also concluded that she necessarily failed to establish a constructive discharge claim. *See Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."). Because we will reverse the District Court's decision with respect to the hostile work environment claim, its reasoning for the constructive discharge claim is no longer sufficient. On remand, the District Court should review the constructive discharge claim in light of evidence of a hostile work environment to determine if the conditions of Mandel's employment had become intolerable.

### ii. Disparate Treatment

Mandel also contends that she received lower wages and less vacation time than similarly situated male employees, specifically Frank Drozal. The District Court correctly concluded that Mandel failed to raise the necessary inference of discrimination because the employees to which Mandel compared herself were not similarly situated—in particular, Drozal held a different position and had a higher level of education. Although the identification of a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably, may give rise to an inference of unlawful discrimination, an employee who holds a different job in a different department is not similarly situated. *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 358-59 (3d Cir. 1999). We thus will affirm the District Court's grant of summary judgment on the Title VII sex discrimination claims (Count I).

## III. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the District Court with respect to the retaliation claims, the PHRA claims, and the Title VII sex discrimination claims, but we will reverse the grant of summary judgment with respect to the Title VII hostile work environment and the constructive discharge claims and remand for further proceedings in accordance with this opinion.