NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3776
_____

JAMIE MCKNIGHT,
                              Appellant

v.

AIMBRIDGE EMPLOYEE SERVICE CORPORATION

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No. 2-15-cv-03461)
District Judge:  Honorable John R. Padova

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2017

Before: SMITH, *Chief Judge,* NYGAARD, and FUENTES, *Circuit Judges*

(Opinion Filed: October 26, 2017)
_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jamie McKnight appeals the order of the District Court granting summary judgment to defendant Aimbridge Employee Service Corporation, dismissing his Section 1981 and Title VII claims of race discrimination and retaliation. We conclude that the appeal is wholly without merit and will affirm.

McKnight asserts that Aimbridge Employee Service Corporation, which manages the Hilton Garden Inn at which he was employed, discriminated against him on the basis of race.[1] McKnight identifies as African-American. He argues generally that the District Court applied wrong standards to its review of his claims of racial discrimination and retaliation. He says it was not lenient enough. He also contends that the District Court ignored or misunderstood evidence that supports his claims.[2] None of these arguments are persuasive.

We conclude that the District Court properly understood that the three-week training provided by Aimbridge was a prerequisite for anyone who wanted to work in the banquet position at the hotel. No one disputes that McKnight completed only one day of this training. Therefore, the District Court did not misapprehend the nature of the training, nor did it apply an inappropriate standard to analyze the qualifications element

---

[1] Magna Hospitality Group hired McKnight to work at the Hilton Garden Inn in June 2013 but Aimbridge took over management of the hotel in October 2013.

[2] McKnight must prove that "(1) [he] is a member of a protected class, (2) [he] was qualified for the position [he] sought to attain or retain, (3) [he] suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir. 2008)).

of his case. It properly determined that McKnight's failure to complete this mandated training is evidence that he was not qualified for the banquet position.[3]

McKnight alternately argues the District Court ignored that he was refused any opportunity to train in spite of him "continually" attempting to be scheduled for training. Yet, he admits there were communications with him and Aimbridge supervisors in June, July and December 2014[4] in which Aimbridge supervisors either attempted to schedule McKnight for training or asked him why he was not completing the training.[5] He also admits he made no effort to contact Aimbridge supervisors between August and sometime in December 2014. McKnight urges us to ignore all of this and instead focus on his testimony that he made numerous calls to Aimbridge supervisors in June, July and August of 2014. This, he says, creates a factual dispute about whether Aimbridge refused his efforts to get training, preventing summary judgment on the qualifications prong. But he admitted that, with one exception in August, he did not leave messages when Aimbridge supervisors did not answer his phone calls. Therefore, even with every

---

[3] After McKnight did not report for training on June 28, 2014, he worked one full day of training on June 29, 2014. Jones does not contest that he did not attend training on June 28, but claims that Aimbridge was aware that he could be at the hotel on that day and would attend on June 29. This dispute about whether he was scheduled for training on June 28, and whether he missed it, is not material to our analysis.

[4] McKnight disputes Aimbridge's claim that its supervisors made other calls to McKnight. For summary judgment purposes, we will accept McKnight's assertion as true.

[5] He asserts that an Aimbridge supervisor, Erica Kim, made employment in the banquet position contingent on him signing a document that prevented him from working in any other position in the hotel. He says he refused to sign. But McKnight fails to show that this act was discriminatory, and he negates the allegation altogether by stating that the general manager soon after told him that signing this document was not necessary to work in the banquet position.

3

reasonable inference construed in McKnight's favor, we are not persuaded that a factual dispute exists. His admissions contradict his contention that Aimbridge refused him any opportunity to train or work.[6] Moreover, one unreturned phone call over a period of six months does not reasonably ground McKnight's claim that Aimbridge actively thwarted his own efforts to get the training that he needed.

Next, we reject his claim that defendant's offer of the banquet position is in itself evidence that he was and is qualified for the job. So, too, do we dismiss his claim that establishing qualification for the position at the prima facie stage is solely focused on whether he is able-bodied. The undisputed record makes clear that the hotel required every person to train for three weeks before they were deemed qualified to work in a banquet position. No more need be said.

Finally, McKnight contends that the District Court ignored the second basis for his assertion of race discrimination.[7] McKnight claims that, after Aimbridge granted his request to transfer from a kitchen job to a banquet job, it discriminated against him by refusing to schedule him to work. He complains that Aimbridge never mentioned this second discrimination claim at summary judgment, and that the District Court failed to analyze it. As a result, McKnight says the claim survived summary judgment. There are two problems with this argument.

---

[6] McKnight's briefs gloss over the requirement to receive mandated training before he could work in the banquet position.

[7] McKnight asserts this was a termination from the line cook position. The undisputed record indicates that McKnight requested the transfer from line cook to the banquet position.

4

First, Aimbridge addressed this very claim in its motion for summary judgment. It argued that McKnight failed to allege a prima facie claim of discrimination because he did not show that animus motivated the Aimbridge supervisor (Tammy Kim) to not schedule him for work after he transferred from the kitchen to the banquet position.[8] Yet, McKnight's response to Aimbridge's motion against his discrimination claims focused solely on the qualification prong of his claim (whether he was qualified for the banquet job). He addressed the failure-to-schedule aspect of Aimbridge's motion only in his discussion of the retaliation claim. Therefore, McKnight never rebutted Aimbridge's claim that he failed to show a prima facie claim of discrimination based on his post-transfer work schedule.

Second, as McKnight acknowledges in briefing, the District Court dismissed McKnight's discrimination case entirely.[9] Moreover, addressing McKnight's retaliation argument at summary judgment, the District Court explicitly dismissed the post-transfer kitchen work schedule aspect of his suit in the context of his retaliation claims. Therefore, McKnight's arguments that the scheduling issue was never raised by Aimbridge and never decided by the District Court are not supported by the record.

---

[8] McKnight construes this issue on appeal as focusing on Aimbridge's refusal to schedule him to work *in the kitchen* after he was transferred from there. McKnight never asserted this claim at summary judgment. Rather, the claim was construed more generally as Aimbridge's failure to schedule him for work after it granted his transfer from the kitchen to the banquet position.

[9] Since, before the District Court, McKnight did not dispute Aimbridge's assertion that he failed to proffer evidence of animus to support a racial discrimination claim arising from the kitchen scheduling issue, the rationale for dismissal of this aspect of his claim is self-evident.

Next we focus on McKnight's claims of retaliation. The controversy centers upon the causation prong of the retaliation claim.[10] McKnight contends that Aimbridge retaliated against him for complaining to the general manager of the hotel about racial discrimination and for filing a discrimination claim with the EEOC. They retaliated, he says, by holding an evaluation meeting and giving him a written warning for being late to work, by setting up a development plan for him to follow, by sending him home early after the evaluation meeting, and by refusing to schedule him in the kitchen after this meeting.

McKnight complains first that the District Court used an improper standard to reach its judgment. The District Court ruled that, without specific evidence of discrimination, adverse employment actions (the second prong of the analysis) cannot include negative evaluations or written development plans. The District Court also ruled that being sent home early was not an adverse action because he was paid for that full day. It said that the lack of economic harm, or any alteration of the terms and conditions of his employment, precludes defining this as an adverse action. McKnight asserts the proper standard is whether such actions could dissuade a reasonable person from complaining about his or her treatment.

---

[10] "To maintain a claim for retaliation" brought pursuant to § 1981 and Title VII, the plaintiff is "first . . . required to establish that he [has] a prima facie case by tendering evidence that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Nonetheless, there were other actions that Ambridge did not dispute were adverse (McKnights's removal from the kitchen schedule after June 12, 2014, an Aimbridge supervisor's failure to schedule him for hours in the banquet position, and Aimbridge's termination of his employment). In these instances Aimbridge asserted non-retaliatory reasons for taking each action. In light of this the District Court proceeded, in the context of the *McDonnell Douglas* framework,[11] to assess whether McKnight showed that Aimbridge's reasons for these other actions were merely pretextual. After reviewing these claims, we have concluded that the District Court's pretext analysis is applicable to and dispositive of all the adverse actions McKnight asserts. Therefore, we now turn to McKnight's arguments regarding pretext.

McKnight complains that the District Court wrongly used the but-for standard to evaluate pretext in the retaliation arguments. However, our jurisprudence states the following.

> '[T]he plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.' *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500–01 (3d Cir. 1997). To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994).

*Moore,* 461 F.3d at 342. Therefore, at summary judgment, a non-moving plaintiff must create a material dispute of fact about the non-discriminatory reasons the employer proffered for its action so that "a reasonable factfinder *could* rationally find [those

---

[11] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

reasons] 'unworthy of credence'" and, consequently, infer that they were not the basis for the employer's action. *Fuentes,* 32 F.3d at 765 (quoting *Ezold v. Wolf. Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (1992)).

We conclude the District Court properly ruled that the undisputed record fails to establish any reasonable basis to even infer that the Aimbridge supervisors who allegedly carried out the adverse acts (Erica Maher and Tammy Kim) were aware (at the time relevant to these claims) that McKnight complained of race discrimination to the general manager of the hotel.[12] Likewise, there is no evidence that, at the time of the actions he asserts, these supervisors had any knowledge of the EEOC discrimination complaint he filed on June 10, 2014. This conclusion undermines all of McKnight's bases for claiming that the entire collection of adverse actions he presents were discriminatory. Therefore, even if the District Court erred by applying an incorrect standard to assess some of these actions at an earlier stage of the *McDonnell Douglas* analysis, such error is harmless.

McKnight also maintains that evidence of the supervisors' awareness of his discrimination complaints is not needed at this stage of review and that he need only provide evidence that a retaliatory motive was more likely than not. But as we noted above, he is required at this stage to provide evidence showing that there is a material dispute of fact. In our view, the District Court determined that McKnight did not meet

---

[12] McKnight presses his point by highlighting that the supervisor in question (Erica Maher) displayed anger towards McKnight, had socialized with the general manager, and knew of McKnight's request to transfer to the banquet position, something he claims he only told the general manager. The District Court rightly characterized these claims as grounding only speculation about the supervisor's knowledge of his racial discrimination claims, not the reasonable inference that is required at summary judgment.

his burden to show that Aimbridge's proffered reason for termination, job abandonment, was pretexual.[13] Accordingly, we conclude that the District Court did not err.

For all of these reasons, we will affirm the order of the District Court that granted summary judgment in favor of Aimbridge, dismissing McKnight's claims of racial discrimination and retaliation pursuant to Title VII and Section 1981.

---

[13] McKnight asserts only that the general manager was aware of his complaint of racial discrimination and the EEOC complaints when, six months later, he terminated McKnight. However, in light of the undisputed record of McKnight's conduct, or lack thereof, in the months between his remarks, the complaint, and his termination, this is wholly insufficient to meet his burden to establish pretext.