**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2081

———————

COLLEEN KOSLOSKY,
                                        Appellant

v.

AMERICAN AIRLINES, INC.

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:18-cv-04654)
District Judge: Honorable Joshua D. Wolson

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 19, 2022

Before:  AMBRO, RESTREPO and FUENTES, Circuit Judges

(Opinion Filed: September 27, 2022)

————————

OPINION*

————————

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Colleen Koslosky, a longtime employee of American Airlines, Inc. ("American"), was fired after racially insensitive postings on her public Facebook page generated an online backlash. She sued American, alleging her firing was discriminatory and pretextual, and that its earlier denial of her request for a disability accommodation (after she suffered nerve damage and edema in her leg) was discriminatory. The District Court didn't buy it and granted summary judgment against all of Koslosky's claims. We agree and so affirm.[1]

## I.

Koslosky worked as a customer service agent for American at the Philadelphia International Airport. During her tenure, the airline operated many of its flights at that airport out of Terminals B and C. On August 16, 2016, Koslosky requested she be assigned to work exclusively at gates in Terminal B on account of edema in her leg that limited her ability to engage in "excessive walking." Supp. Appx. 35–36, 118–121. After reviewing her request for accommodation, American's Human Resources department denied the request but instead offered to accommodate Koslosky by assigning her exclusively to other roles that did not require excessive walking.

On July 18, 2017, Koslosky submitted another request for the same accommodation (citing edema and nerve damage in her leg), which Human Resources again denied, offering the same alternative accommodations it did a year prior. In a

_____

[1] The District Court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

written denial of the request, Human Resources Manager Bob Yori explained American would not allow Koslosky to work exclusively in Terminal B, as the company needed to maintain "flexibility" in its operations "to assign agents to whatever concourse and gates are in need of staffing as a result of often spontaneous gate changes, diversions and irregular operations." *Id*. at 126. Koslosky again refused American's alternative accommodation.

Undeterred, she appealed to Vice President Olympia Colasante, the airline's most senior employee at the Philadelphia Airport, who granted Koslosky's request "[s]olely for the purpose of helping [her]." *Id*. at 197–200. On August 2, 2017, Koslosky was assigned exclusively to Terminal B.

In September 2017, several posts she had made on her public Facebook page went viral. One post, purportedly quoting a certain Dan Pflaum, stated:

> If I were Black in America, I think I'd get down on my knees every day and thank my lucky stars that my ancestors were brought over here as slaves, because when you look at the amazing rights, privileges, and benefits that come along with U.S. citizenship, and then compare that to the relentless poverty, violence, and suffering in Africa, it's like winning the Super Lotto, a hundred times over. But I guess I'm old-fashioned that way, believing as I do in the importance of gratitude, humility, and respect.

*Id*. at 128. Another post featured a t-shirt emblazoned with the question: "Have you lost your cotton pickin' mind?" *Id*. at 129. And in a third post Koslosky urged blue-eyed people to "UNITE" because "[t]oo many [blue-eyed people] are reproducing with Brown Eyed People" to the point that "[w]e are losing Blue Eyed People." *Id*. at 130. Outraged

social media users identified Koslosky as an American employee,[2] made collages of her posts, and put them on American's official social media pages. An American employee based in Ft. Lauderdale, Florida, reported that customers and employees alike—from as far afield as Seattle—had complained about Koslosky's posts. More American employees filed complaints through the company's ethics hotline; another went straight to Colasante and American's CEO. Still others outright refused to work with Koslosky "[b]ecause they believed that [she] was racist." *Id*. at 204. As Colasante summarized, the outcry over Koslosky's comments "became a large PR [public relations] incident for the company." *Id*. at 206.

In response to the furor, American suspended Koslosky. In October 2017, American terminated Koslosky's employment for violating its social media, passenger service conduct, and work environment policies.[3] Believing she was fired unjustly and discriminated against on account of her disability and her gender, Koslosky brought a series of legal actions against the company. In February 2018, she cross-filed a Charge of Discrimination with the federal Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") for failing to accommodate her disability. She then sued American in federal court, alleging gender and disability discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

---

[2] Koslosky had, in yet another Facebook post, identified herself as an American employee.
[3] Koslosky has admitted she posted the offensive content.

and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.* The District Court entered summary judgment in favor of American and dismissed all counts. Koslosky now appeals.

## II.

We give a fresh, or plenary, review to motions for summary judgment, applying the same standard as the District Court. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). We will affirm summary judgment if, after assessing the underlying facts "in the light most favorable to [Koslosky]," *id.* (internal quotation marks omitted), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Koslosky first challenges the District Court's determination that she failed to file her disability accommodation claim timely with the EEOC and PHRA. Under relevant law, she had, from the date of the alleged discriminatory act, 300 and 180 days, respectively, to file with the EEOC and PHRA. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1); 43 Pa. Cons. Stat. § 959(h). The Court found Koslosky filed her complaint with the agencies in February 2018, over 500 days after American denied her first request for disability accommodation in August 2016. She contends the clock should instead start running from the date of her second request in July 2017. But "[m]ere requests to reconsider [an employer's decision] . . . cannot extend the limitations periods applicable to the civil rights laws." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980); *see also Washington-Morris v. Bucks Cnty. Transp., Inc.*, No. CV 17-3631,

5

2018 WL 2021081, at *6 (E.D. Pa. May 1, 2018) ("[A] reasonable accommodation request is a one-time occurrence . . . even when the plaintiff made multiple requests for the same reasonable accommodation and that request was repeatedly denied.") (internal citation and quotation marks omitted). Koslosky asserts we should treat subsequent requests differently where an employee's medical circumstances have materially changed. Maybe so. Yet because she provides no evidence that happened here, we affirm the District Court on this ground.

Koslosky next contends American used the outcry over her social media posts as a pretext to fire her on account of her gender and/or her disability. To prove pretext, she must point to evidence from which a reasonable factfinder could "either (1) disbelieve [American's] articulated legitimate reasons [for firing her] . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [American's] action." *In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (internal citation and quotation marks omitted). As explained below, she fails to point to such evidence.

To support a finding of pretext, Koslosky contends the temporal proximity between American's grant of her accommodation request and her firing "establishes a prima facie case" for retaliation, or, failing that, shows "a sufficient antagonism" for retaliation. Op. Br. at 21. But the two-month gap between Koslosky's last accommodation request (a protected workplace activity) and her firing is too long to draw an inference of retaliation. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 261 n.8 (3d Cir. 2017) ("[A]n intervening temporal period of two days may raise the inference

6

of causation" but "a period of two months cannot."). And while Koslosky claims causation can be inferred by evidence of ongoing antagonism against an employee, we agree with the District Court that she has failed to "identify anything that happened during those two months to suggest anyone was resentful about her accommodation." Appx. at 13.

She also claims that a male American customer service employee who was not disciplined for his social media posts disparaging Trump voters—calling them "ignorant rednecks" and "uneducated racist white people," Appx. at 364–74—establishes a *prima facie* case of gender and disability discrimination. But while "a similarly situated individual outside of the protected class, who engaged in the same conduct [as the plaintiff] but was treated more favorably, may give rise to an inference of unlawful discrimination," *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013), Koslosky does not argue American management *knew* about her colleague's inflammatory social media posts. This is dispositive. *See Oliver v. Clinical Pracs. of Univ. of Pa.*, 921 F. Supp. 2d 434, 448 (E.D. Pa. 2013) (coworker not relevant comparator absent evidence decisionmaker had awareness of coworker's alleged conduct). Her argument therefore fails.

Koslosky also maintains that whether her coworker was similarly situated "constitutes a fact-intensive inquiry that is not susceptible to summary judgment" because "there is a genuine issue of material fact regarding valid comparators." Op. Br. at 27 (internal quotation marks omitted). But for that employee to be comparable,

American had to know of his posts, and Koslosky offers no evidence of this; hence she gives no underpinning for a possible material fact.

As Koslosky points to no evidence of pretext, we are thus left with one conclusion: American fired her because her racially insensitive social media posts violated its policies and generated an outcry from employees and customers alike. Because this is a legitimate justification for her ouster, we are not persuaded that the company violated any law here. For these reasons, we affirm the District Court's grant of summary judgment against Koslosky's claims.