**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2132

_____

ANDREA MUDIE,

Appellant

v.

PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE;
CHARLES PASCALL, PCOM Office Manager

_____

On Appeal from the Eastern District of Pennsylvania
(D.C. Civil No. 2:21-cv-02156)
District Judge:  Honorable Karen S. Marston

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 13, 2023

Before: PORTER, FREEMAN, and FISHER, *Circuit Judges*

(Opinion filed  September 25, 2023)

---

**OPINION**[*]

---

FREEMAN, *Circuit Judge*.

Andrea Mudie sued her former employer for violating her Title VII rights. We will affirm the District Court's summary judgment for the employer.

I[1]

Mudie is a U.S. permanent resident born in Trinidad and Tobago. She began working at the Philadelphia College of Osteopathic Medicine ("PCOM") as a medical assistant in February 2018. That summer, she began reporting to Clinical Operations Manager Charles Pascale. In 2019, Pascale changed Mudie's work schedule, denied her time-off requests, and accused her of lying to him. He also made several comments about her national origin and English-speaking abilities. For example, he told her she did not understand American culture; commented that "[t]his is America," App. 385; and said her behavior made him "know you're not an American," App. 480. He twice told her not to speak in staff meetings because she was "too direct," saying that may be because of "where you came from." App. 381–85; *see also* App. 476–78 (saying "islanders are more aggressive."). And he said, "Trump should not only build a wall . . . for the Mexicans, he should build a wall for all outsiders." App. 388.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because we write primarily for the benefit of the parties, we recite only the important facts. We recount the facts in the light most favorable to Mudie.

In September and October 2019, Mudie made two complaints of discrimination to Christina Mazzella, the Director of Human Resources. PCOM's Chief Compliance Officer instructed Pascale not to change Mudie's schedule or take any disciplinary action against her without involving HR. Mudie also complained to HR about Pascale's supervision, and coworkers told Mudie that Pascale was out to get her. Her problems with Pascale continued until he resigned from PCOM in February 2020.

During Pascale's tenure at PCOM, Mudie received threats at work. In October 2019, she received a threatening letter through interoffice mail that said: "You should have never told on us. You will pay. You might escape this time but next time you wont [sic]." App. 591, 536. A few days later, a non-employee came into the office with Mudie's PCOM username and password written on a piece of paper and said someone named Charles paid him to delete Mudie's email. PCOM investigated both incidents and contacted the police about the threatening letter.

Around late 2019, a temporary employee told Mudie that she did not want to work with "islanders," and a group of colleagues including Nathalie Rios said Mudie was the only "outsider." Rios also informed Mudie that Pascale was complaining about her to HR, and the group told Mudie that she was going to be fired because of her own complaints to HR.

Meanwhile, from September to November 2019, PCOM's Compliance Office investigated Mudie regarding a potential HIPAA violation. Mazzella warned Mudie that she could be fired for such a violation.

3

Mudie filed her first Charge of Discrimination with the EEOC and the Pennsylvania Human Relations Commission in November 2019.  The EEOC issued a dismissal and a right to sue letter in March 2020.  Mudie did not file suit within 90 days.

Mudie experienced additional incidents several months later.  In August 2020, a new PCOM manager transferred her to a different branch office.  Mudie objected to the transfer based on her childcare schedule and concerns about the neighborhood's safety.  In fall 2020, a patient delivered a Halloween card to Mudie.  The card contained a handwritten threat alongside a pre-printed greeting: "*It's Halloween* – watch what you *eat, drink, and be scary!*  Told you we would get you.  This is only the beginning, your best bet is to resign or lose your career.  Your choice."  App. 19 (pre-printed text in italics).  The patient told a PCOM doctor that Rios had paid him to deliver the card to Mudie.  PCOM could not verify Rios's involvement and did not discipline Rios.

In December 2020, PCOM discovered that Mudie made hundreds of personal calls during her shifts to phone numbers with Trinidad and Tobago area codes.  That month, PCOM issued Mudie a notice of termination for violations of company policies, including theft of time and unauthorized use of company resources.  Her termination took effect on January 2, 2021.

In May 2021, Mudie sued PCOM, Pascale, and Mazzella for violating state and federal civil rights laws.  In August 2021, she filed a second charge of discrimination with the EEOC ("Second EEOC Charge").  She received a right-to-sue notice within two days, and then filed her operative amended complaint.  After dismissal of some claims, only one claim proceeded to discovery: a claim against PCOM under Title VII of the

4

Civil Rights Act of 1964. Therein, Mudie contended that she experienced a hostile work environment due to her national origin, that PCOM retaliated against her when she complained, and that she was wrongfully terminated.

In May 2022, the District Court granted PCOM's motion for summary judgment. It held that it could not consider any evidence of a hostile work environment that occurred more than 300 days before Mudie filed her Second EEOC Charge, and that the remaining evidence could not support a hostile work environment claim. It also held that Mudie failed to make out a prima facie case of retaliation or wrongful termination.

Mudie timely appealed from the summary judgment.

## II[2]

Mudie appeals only the District Court's decision denying relief on a hostile work environment theory.[3] We agree that PCOM was entitled to summary judgment.

## A

To bring her Title VII suit, Mudie was required to "first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel v. M & Q*

---

[2] The District Court had jurisdiction over the Title VII claim under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013). We view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 236 n.3 (3d Cir. 2022).

[3] In her brief on appeal, Mudie expressly withdrew her wrongful termination claim. Appellant's Br. at 2 n.2, 19 n.15. And although she refers to retaliation in her brief, the only issue she presents for review is whether the District Court erred in granting summary judgment for PCOM on the hostile work environment claim. So she has forfeited any challenge to the resolution of the retaliation claim. *United States v. Pelullo*,

*Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1) and addressing requirements in Pennsylvania). Mudie filed her Second EEOC Charge (the only EEOC charge that led to a lawsuit) on August 3, 2021. So any Title VII violation that predated October 7, 2020 is time barred.

But Mudie's Title VII claim is based on a hostile work environment theory. And courts recognize that a hostile work environment "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years," unlike discrete acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). To account for this, courts apply the continuing violation doctrine. Under the doctrine, when at least one component act of a hostile work environment occurred within the limitations period, courts may consider earlier component acts that are "part of the same unlawful employment practice." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017). To be part of the same unlawful employment practice, component acts must involve "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.* (quoting *Mandel*, 706 F.3d at 167).

Mudie argues that the continuing violation doctrine permits us to consider acts predating October 7, 2020. We disagree. While some of the earlier acts are suggestive of discrimination, the acts within the limitations period are not. The only acts that occurred on or after October 7, 2020 were (1) Mudie's transfer to a different branch office, (2) her

_____

399 F.3d 197, 222 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes [forfeiture] of that issue on appeal.").

receipt of a Halloween card containing a threat, (3) PCOM's failure to discipline Rios for allegedly delivering the Halloween card, (4) PCOM's discovery of Mudie's personal calls during work hours, and (5) Mudie's termination (the stated reason for which was the violation of company policies). None of these acts was facially discriminatory. And the record does not support a reasonable inference that any of these acts was motivated by discrimination on the basis of national origin. So they are not similar to the untimely acts that did implicate her national origin.

Mudie argues that Mazzella was part of PCOM's HR team before and after October 7, 2020, and thus serves as the bridge between the timely and untimely acts. But no reasonable jury could conclude that the timely acts were motivated by discriminatory animus, so Mazzella's involvement in some of those acts does not support a continuing violation of Mudie's Title VII rights.

Rios cannot serve as the bridge either. Even assuming that Rios wrote the threatening note in the Halloween card, no reasonable jury could infer that she did so because of national origin discrimination. So the continuing violation doctrine does not apply.

B

Proceeding to the merits of the hostile work environment claim, we consider only the acts that occurred on or after October 7, 2020. As discussed in Section II.A, those acts do not establish the first element of the claim: that Mudie suffered intentional discrimination because of her national origin. *See Mandel*, 706 F.3d at 167 (reciting the

elements of a hostile work environment claim).  So we agree with the District Court's summary judgment for PCOM.

* * * * *

For the reasons stated above, we will affirm the District Court's summary judgment.