NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1180
_____

DEBORA LAMB,
Appellant

v.

MONTGOMERY TOWNSHIP; LAWRENCE J. GREGAN; KEVIN COSTELLO;
THREE JOHN DOES AND THREE JANE DOES

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-06759)
District Judge: Hon. Wendy Beetlestone

_____

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2018

Before: JORDAN, ROTH, *Circuit Judges* and STEARNS<sup>∗</sup>, *District Judge.*

(Opinion Filed: May 7, 2018)

_____

OPINION<sup>∗∗</sup>

_____

---

∗ Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.

∗∗ This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Debora Lamb appeals from the grant of summary judgment against her on her claims that Montgomery Township, Lawrence Gregan, and Kevin Costello (the "Defendants") violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq*.[1]  We will affirm.

## I.    Background

### A.    Factual Background

Lamb worked in Montgomery Township's Public Works Department ("PWD") for 15 years.  She was fired in 2013 after internal and police investigations concluded that she had stolen her supervisor's iPhone.  At the time Lamb was fired, Costello was the Township's Director of Public Works and Gregan was the Township Manager.

The Township began an investigation after Lamb's immediate supervisor, Glenn Heberlig, reported to Costello that his iPhone had disappeared from the employee break room.  The Township Police were called to investigate.  A Township Police detective interviewed each employee (including Lamb) who had been at the PWD building at the time in question and, after receiving consent, searched every employee's car (including

---

[1]  Lamb also sued six John and Jane Doe defendants.  The District Court properly dismissed those Doe defendants pursuant to Federal Rule of Civil Procedure 21 because Lamb failed to identify them after the discovery period closed.  *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) ("The case law is clear that [f]ictitious parties must eventually be dismissed, if discovery yields no identities[.]" (quotation marks and citation omitted)).

Lamb's) that had been parked at the building. The interviews revealed that several PWD employees had observed tensions between Lamb and Heberlig. Although the detective's search did not locate the missing iPhone, a Township resident found the iPhone several days later and brought it to the police. That resident led the detective to the intersection where he had found the phone, which was about three-tenths of a mile from where the iPhone had disappeared.

The detective returned to the PWD building to ask the office secretary which crews had gone out the morning that the iPhone disappeared. Based on his prior interviews, the detective knew that Lamb was on a crew that morning with co-worker Donald Johnson. While he was talking with the secretary about the work crews, Lamb was near enough to have overheard the conversation. That same day, the detective positioned himself near the intersection where the iPhone was found. While at that location, he saw Lamb drive by slowly and look towards the area where the iPhone was found. Lamb contends that she had driven by the subject intersection that day because she was performing ordinary work responsibilities and was flicking a cigarette out the window while passing the intersection. The detective subsequently asked Lamb whether she had taken the iPhone. Lamb denied doing so.[2] Based on the detective's preliminary investigation, the Township placed Lamb on administrative leave.

_____

[2] The detective then collected voluntary DNA samples from Lamb and Heberlig. The DNA test results, received after Lamb's termination, were ultimately inconclusive as to both the presence of Lamb's DNA on the iPhone and to the presence of Heberlig's DNA on his own iPhone.

The detective continued his investigation and again spoke with Johnson, the PWD employee who had worked with Lamb the morning the iPhone disappeared. Johnson recalled, according to the detective's report, that when Lamb tossed a pair of her gloves into their PWD truck that morning, "they made a clunk or hard contact sound as if something solid was inside one of the gloves." (App. at 258.)

The Township conducted its own internal investigation into the alleged theft. That internal investigation concluded – based on interviews with Lamb and fifteen other PWD employees, discussions with the investigating detective, and a review of the police report – that Lamb had taken Heberlig's iPhone. Gregan sent Lamb a pre-disciplinary notice on March 20, 2013, informing her that she might be subject to disciplinary action, up to and including termination, based on the outcome of the internal investigation and the determination that she had been untruthful when questioned about the incident. Gregan fired Lamb on April 4, 2013.

## B.    Relevant Procedural History

On July 3, 2013, Lamb filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. She subsequently filed a complaint in federal court alleging hostile work environment, sex discrimination, and retaliation claims. The District Court's scheduling order set an April 13, 2016 deadline for the completion of fact discovery, an April 20,

4

2016 deadline for the exchange of affirmative expert reports, and a May 4, 2016 deadline for the completion of expert depositions.

After those deadlines had passed, the Defendants moved for summary judgment, which Lamb opposed. Lamb's opposition brief included a declaration by Maria Brogna that offered opinions on the sufficiency and propriety of the police investigation into the iPhone theft.[3] The Defendants moved to strike the Brogna Declaration as an improper attempt to introduce expert testimony in contravention of the Federal Rules of Civil Procedure and the District Court's scheduling order. The District Court granted the Defendants' motion to strike with regard to Brogna's expert testimony and granted summary judgment in favor of the Defendants. Lamb appeals those rulings.

## II.    Discussion[4]

### A.    The District Court Did Not Abuse Its Discretion in Striking the Brogna Declaration.[5]

The District Court did not abuse its discretion in striking the Brogna Declaration. The the record demonstrates that Lamb's litigation conduct deprived the Defendants of the opportunity to depose Brogna. Federal Rule of Civil Procedure 26(a)(2) requires the disclosure of experts and their reports "at the times and in the sequence that the court

---

[3] Brogna is a former Township police officer.

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[5] We review for an abuse of discretion a district court's decision granting or denying a motion to strike. *Meditz v. City of Newark*, 658 F.3d 364, 367 n.1 (3d Cir. 2011).

5

orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 37, district courts are authorized to exclude evidence if a party violates the requirements of Rule 26(a). Fed. R. Civ. P. 37(c)(1). A party can overcome Rule 37 sanctions by demonstrating that a Rule 26 violation was "substantially justified or … harmless." Fed. R. Civ. P. 37(c)(1). We have cautioned that district courts should only exclude critical evidence such as expert testimony upon "a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citation omitted).

The District Court concluded that Lamb's conduct was neither substantially justified nor harmless. First, her tactics deprived the Defendants of a meaningful opportunity to depose Brogna by classifying Brogna as an expert witness to avoid a fact deposition, and then by failing to produce her expert report (*i.e.* the Brogna Declaration) until well after the deadline for expert depositions. Second, the justification offered for that failure – that Lamb had not received relevant discovery in time for Brogna to provide a timely expert report – was unconvincing. Lamb had received the necessary discovery nearly two months prior to submitting her summary judgment opposition. The District Court determined that Lamb's decision to blindside the Defendants at summary judgment, instead of providing a timely report or requesting an extension of expert discovery deadlines, was a flagrant disregard of the rules. There was no abuse of discretion in the consequent granting of the Defendants' motion to strike.[6]

---

[6] Lamb also appeals the District Court's denial of her motion to strike certain affidavits relied upon by the Defendants pursuant to the "sham affidavit" doctrine.

**B.    The District Court Did Not Err in Granting Summary Judgment.**[7]

We agree with the District Court's well-reasoned analysis granting summary judgment in favor of the Defendants on Lamb's hostile work environment, sex discrimination, and retaliation claims.

To bring a claim under Title VII in Pennsylvania, a plaintiff must first have filed a claim with the EEOC within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).  Similarly, to bring a claim pursuant to the PHRA, a plaintiff must first have filed a claim with the Pennsylvania Human Rights Commission within 180 days of the alleged discriminatory act.  43 Pa. Stat. and Cons. Stat. § 959(h); *Mandel*, 706 F.3d at 164.  Discrete discriminatory acts falling outside of the statutory time periods are not actionable.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

---

(Opening Br. at 27.)  Lamb, however, fails to provide a single record citation highlighting the alleged contradictions between those affiants' deposition testimonies and their respective affidavits.  Federal Rule of Appellate Procedure 28(a)(8) requires appellant's legal argument to include "citations to the … parts of the record on which the appellant relies[.]"  Fed. R. App. P. 28(a)(8).  Accordingly, Lamb has presented no basis for us to conclude that the District Court abused its discretion when it denied Lamb's motion.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) ("It is well settled that if an appellant fails to comply with [Rule 28] on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.").

[7] Our review of a grant of summary judgment is plenary.  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016).  Summary judgment is appropriate if there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In reviewing a summary judgment ruling, we view the facts in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 248-49.

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Mandel*, 706 F.3d at 165 (quotation marks and citation omitted).  To demonstrate a continuing violation, all acts underlying the claim must be "part of the same unlawful employment practice." *Id.* at 165-66.  When determining whether an employer's actions constitute a continuing violation, we consider the frequency of the actions and whether they relate to the same subject matter. *Id.* at 166.  Acts relate to the same subject matter when they "constitute the same type of discrimination." *Id.* at 166 n.2.

### 1.   Hostile Work Environment Claim

The District Court correctly concluded that, with respect to her hostile work environment claim, Lamb failed to establish a continuing violation and that the allegedly discriminatory acts falling within the limitations period did not constitute severe or pervasive discrimination.  Lamb argues that the Court erred in rejecting her contentions that being forced to work in a moldy environment without safety equipment, and being denied worker's compensation benefits until she retained an attorney, were related acts of sex discrimination.  The record demonstrates, however, that to the extent Lamb was required to work in a moldy environment, it was not because of her sex.  Rather, Lamb acknowledged that male employees worked alongside her in the same conditions.  Further, the record belies Lamb's unsupported contention that she was denied worker's compensation benefits because of her sex.  She testified that, before she retained an

8

attorney, the Township's worker's compensation policy covered all her relevant medical expenses and that she was paid for all the time she missed because of an earlier workplace injury. Because those incidents occurred outside of the limitations period, and because Lamb has failed to point to any part of the record that would support her contention that those incidents amounted to sex discrimination, the District Court did not err in refusing to consider those acts as part of Lamb's hostile work environment claim.

Lamb next argues that the District Court erred in determining that certain derogatory comments made to or about her during the limitations period did not constitute severe or pervasive harassment. As part of her prima facie hostile work environment claim under Title VII and the PHRA, Lamb must establish that she was subjected to discrimination that was severe or pervasive. *Id.* at 167; *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The Court noted that Lamb identified only "one incident of harassment overtly based on sex during the limitations period: the comment [from a male co-worker] … that she 'could just piss on the side of the truck' if she were male." (App. at 33.) That comment, "while crass and unwarranted," does not, standing alone, constitute severe or pervasive discrimination. (App. at 34.)[8]

---

[8] Lamb further argues that she was subjected to a hostile work environment because she is a lesbian and overheard co-workers use homophobic slurs. Lamb cannot succeed on that argument either for two reasons. First, she again fails to provide a single record citation in support of her contention that she overheard the alleged comments, or to establish the frequency with which she overheard the alleged comments. Second, to the extent the record supports that her co-workers used homophobic slurs, occasional derogatory comments not intentionally directed at a plaintiff, but simply overheard by a plaintiff, are not sufficient to establish a hostile work environment. *See Caver v. City of*

9

## 2. Sex Discrimination Claim

The District Court rightly concluded that Lamb was unable to establish a prima facie claim of sex discrimination because she lacked evidence that she was treated less favorably than her male co-workers. Such evidence is essential. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016) (explaining that sex discrimination claims under both Title VII and the PHRA "are governed by essentially the same legal standards").

Lamb argues that the District Court erred by concluding that the comparators she presented to establish that she was treated less favorably than her male co-workers were not sufficiently similar to her. But she identifies only a single instance when male Township employees were treated differently after being accused of a theft of a similar or more serious nature. In that incident, four Township police officers were not disciplined following an investigation that concluded that those officers stole firearms. The District Court properly concluded, however, that those officers were not similarly situated to Lamb because they held different jobs in a different department. *See Mandel*, 706 F.3d at 170 ("[A]n employee who holds a different job in a different department is not similarly situated."). Furthermore, those officers were parties to a collective bargaining agreement, which required different disciplinary procedures, whereas Lamb was an at-will employee

---

*Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005) (explaining that offhand and isolated comments "merely overheard" by a plaintiff do not create a hostile work environment).

without those same contractual protections.  In short, Lamb failed to establish a prima facie claim of sex discrimination.

### 3.  Retaliation Claim

We also agree with the District Court that Lamb has not established a prima facie case of retaliation.  As part of that prima facie case, Lamb had to establish "a causal connection between [her] protected activity and [her] employer's adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted); *see also Connelly*, 809 F.3d at 791 n.9 (explaining that the same legal framework applies to retaliation claims under Title VII and the PHRA).  But she failed to do so.

Lamb argues that the Defendants terminated her in retaliation for her alleged participation in a 2007 employment discrimination case brought by other Township employees.  The District Court rejected that argument because the record is devoid of evidence that the individual responsible for her termination, Gregan, had any idea that Lamb was involved in the prior lawsuit.  Lamb contends that the "cat's paw" theory of liability nevertheless saves her claim.  Under that theory, if a non-decision maker's discriminatory act serves as the proximate cause for the ultimate adverse employment action, then employer liability can attach.  *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)).  Here, Lamb contends that Costello was aware of her alleged participation in the prior lawsuit, "got the ball rolling" with the investigation, and communicated with Gregan about the decision to terminate.  (Opening Br. at 25.)  The District Court rejected Lamb's argument because the record evidence demonstrated that the proximate cause for Gregan's decision

11

to terminate Lamb was the conclusions of the police report and internal investigation that Lamb had stolen the iPhone. We agree. Merely "getting the ball rolling" with an investigation is not sufficient to invoke the "cat's paw" theory of liability, absent some showing that the non-decision maker influenced the ultimate adverse employment action. *See Jones*, 796 F.3d at 331 (rejecting "cat's paw" theory of liability where the plaintiff offered "no evidence that [the non-decision maker] influenced the … investigation or … termination decision beyond getting the ball rolling" with the investigation culminating in the plaintiff's termination). Lamb has not pointed to any evidence in the record to support her desired conclusion, and we see no error in the District Court's analysis.[9]

## III. Conclusion

For the foregoing reasons, we will affirm the grant of summary judgment.

---

[9] Because we have concluded that the District Court did not err in determining that Lamb failed to establish a prima facie claim under the PHRA, we need not address Lamb's assertion of error concerning aiding and abetting liability pursuant to the PHRA. Nor do we address Lamb's argument, raised in a single footnote without citation to legal authority, that the Court erred in considering the Township police report when ruling on the Defendants' summary judgment motion. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815-16 (3d Cir. 2016) (deeming an argument raised by a litigant in a footnote forfeited).