**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2928
_____

REUBEN V. GLASS,
                              Appellant

v.

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-05449)
District Judge: Honorable Wendy Beetlestone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 13, 2018

Before:  CHAGARES, VANASKIE, <u>Circuit</u> <u>Judges</u>, and BOLTON, <u>District</u> <u>Judge</u>*.

(Opinion Filed: May 10, 2018)
_____

OPINION[1]
_____

_____

* The Honorable Susan R. Bolton, Senior United States District Judge for the District of
Arizona, sitting by designation.
[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

BOLTON, <u>District</u> <u>Judge</u>.

Reuben Glass ("Appellant") appeals an order granting summary judgment in favor of the First Judicial District of Pennsylvania ("FJD" or "Appellee") on Appellant's claims of sex-based disparate treatment and retaliation. We will affirm the district court.

**I**

Appellant began his employment with FJD in May 2005 as a legal secretary. On September 6, 2010, he was transferred to the Office of Human Resources, where he worked as a Personnel Investigator. His work included performing residency checks and checks on employees who called in sick. These checks were unpopular with many employees and administrators, and in August 2013, the position was eliminated. On August 12, Appellant was transferred to the Office of Court Compliance ("OCC") where his position was Tipstaff 2. One of the OCC's purposes is to facilitate criminal defendants' restitution and court fee payments. Appellant worked in Room B-04 of the Criminal Justice Center ("CJC") in the mornings and in Courtroom 1104 in the afternoons. His duties included unlocking the rooms, checking in defendants, checking for outstanding warrants and contacting the sheriff's office if he found one, acting as a security presence to maintain general order in the courtrooms, and locking Courtroom 1104 at the end of the day. Appellant's work schedule required him to sign in at City Hall Room 370 at 9:00 a.m., open Room B-04 at 9:30 a.m., remain in B-04 until his paid lunch from 11:00 a.m. to 12:00 p.m. or 11:30 a.m. to 12:30 p.m., open Courtroom 1104 at 12:30, remain in 1104 until the list of defendants was finished, lock up 1104, and return to Room 370 and remain until 5:00 p.m.

During the relevant period, the OCC officers assigned to Room B-04 and Courtroom 1104 were Theresa Chambers (female), Jessica Washington (female), Bonnie Day (female), Karl Dargan (male), Aaliyah Hill (female), and James Jordan (male). The duties of the OCC officers were to meet with the defendants to set up payment plans for their court fees and restitution payments. The OCC officers were also often in different rooms responding to emails and completing their other duties. Ms. Chambers, Ms. Washington, and Ms. Day worked in Courtroom 1104; Mr. Dargan worked in Room B-04, assisted by Ms. Hill as necessary; and Mr. Jordan worked in City Hall and came to courtrooms as needed. When Appellant began working for the OCC, Ms. Chambers informed him that the OCC officers were aware that he had been the Personnel Investigator and that Ms. Washington did not appreciate a sick check he had performed. During his time there, Appellant observed that Ms. Chambers, Ms. Washington, and Ms. Hill frequently came to work late, left early, or disappeared from their assigned courtrooms for extended periods of time. Mr. Dargan also left daily around 4:30 p.m. and Mr. Jordan left early at least once, running into his supervisor on the way out.

On March 14, 2014, Dominic Rossi, the OCC supervisor, told Appellant that he had received numerous reports that Appellant left his assigned courtroom for extended periods of time and verbally warned him that further discipline would follow continued violations. The same day, Appellant emailed Mr. Rossi and asked him to clarify the working hours for everyone at the OCC. Mr. Rossi replied that the schedule is to report to Room 370 by 9:00 a.m., report to B-04 at 9:30 a.m., take lunch from 11:30 a.m. to 12:30 p.m., report to 1104 at 12:30 p.m., remain in 1104 until the end of the defendant list,

3

report back to Room 370, and leave at 5:00 p.m. Mr. Rossi confirmed that the schedule applied to everyone. Appellant observed that Ms. Chambers and Ms. Washington continued to come in late and leave early, and he continued to complain about their attendance via telephone, text, and email. Ms. Chambers had an assigned office in Room 310 of the CJC, where she sometimes worked, and Mr. Jordan worked in City Hall. It is unclear if the other OCC officers had offices, and if so, where they were.

On June 11, 2014, Appellant had a dispute with the OCC officers in Courtroom 1104. On June 12, Appellant sent an email to Mr. Rossi concerning the matter, and he reported the incident in a staff meeting later that month. He reported that Ms. Washington and Ms. Chambers were cursing at him, calling him names, and complaining that he reported their absences from the courtroom. Mr. Rossi did not address the issue at the staff meeting because Ms. Chambers was not present, but he did instruct Appellant to work things out with his coworkers.

On September 16, 2014, Amy Mader, FJD's Human Resources Executive Director, directed all deputy district court administrators to have their employees fill out new outside employment disclosure forms. Appellant completed his form on September 30, and reported that he served writs for Philadelphia Writ Service. He stated that he served 85 percent of his writs on the weekends and the other 15 percent on Mondays through Wednesdays from 6:00 to 8:00 p.m. Mr. Dargan and Ms. Day also disclosed outside employment. Mr. Rossi requested a copy of all the writs Appellant had served in 2014 to that point and compared them to his attendance records. He found that 11 writs were served either during work hours or so close to work hours that Appellant could not

4

have served them without cutting into work hours. On October 20, Mr. Rossi terminated Appellant's employment for failing to truthfully disclose the nature of his outside employment, serving writs during work hours, and falsifying attendance reports by claiming he was at work while serving writs.

On October 31, 2014, Appellant appealed his termination to Ms. Mader, who upheld the termination on November 24. On December 8, he appealed his termination to Joseph Evers, the FJD Court Administrator. Joseph McGill, the Director of Administration for the Philadelphia Family Court, held hearings on January 22 and March 13, 2015 where Appellant and his significant other, Jane Malloy, testified. They testified that some of the writs were actually served by Ms. Malloy, who mistakenly signed Appellant's name; some of the timestamps were mistaken; and some of the writs were served during lunch, which Appellant did not know was prohibited. At the conclusion of the hearings, Mr. McGill recommended upholding the termination, and on August 4, 2015, Mr. Evers issued a letter denying the appeal. Appellant believes that Mr. Evers held a grudge against him because he sick checked one of Mr. Evers' friends during his time as a Personnel Investigator.

Appellant filed a complaint alleging sex-based disparate treatment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17. The district court granted Appellee's motion for summary judgment on both claims. It concluded that the other OCC officers were not proper comparators because they were not comparably situated to Appellant due to their different job duties. It also concluded that there was no evidence Mr. Rossi investigated, and subsequently terminated, Appellant on the basis of

5

sex because another man also disclosed outside employment and was not investigated. Finally, it concluded that there was no evidence in the record that Appellant ever made a protected complaint and that he therefore failed to establish a *prima facie* case of retaliation. Appellant filed a timely notice of appeal on August 31, 2017.

## II

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*. *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir. 2018). In doing so, we apply the same test that is applied by the district court. *Id*. at 649–50. Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Id*. A nonmoving party must point to evidence in the record that would allow a jury to rule in its favor to defeat a motion for summary judgment. *Bradley*, 880 F.3d at 650. "When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the nonmoving party." *Id*.

## III

Appellant argues, without citing any legal authority, that the district court erred in granting summary judgment because the OCC officers were similarly situated

6

comparators, there was an issue of fact regarding whether Mr. Rossi chose to investigate his outside employment in a discriminatory way, and his termination was close enough in time to his complaints for them to be causally related. None of these arguments are availing.

Appellant's disparate treatment claim requires some evidence that his employer treated him "less favorably than others based upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999). A possible form of evidence is a showing that a similarly situated comparator engaged in similar conduct but was treated more favorably. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). In Appellant's case, he attempted to show that the women with whom he worked were treated more favorably because they were not disciplined for their absences from their assigned courtrooms and because Mr. Rossi did not investigate their outside employment. The district court, however, correctly concluded that they were not similarly situated comparators because they held different jobs and had different responsibilities, some of which took them out of their assigned courtrooms. The evidence shows that Appellant and the OCC Officers did not have the same job functions. It is undisputed that one of Appellant's duties was to maintain order in the courtrooms, thus making his presence essential. His presence was also required to sign in defendants. On the other hand, at least two of the OCC Officers—Mr. Jordan and Ms. Chambers—had offices outside of their assigned courtrooms where they would send emails and perform other duties. Ms. Hill and Mr. Jordan were only required to be in courtrooms as needed.

7

Therefore, the district court correctly concluded that the OCC officers were not similarly situated to Appellant because of their differing responsibilities.

Even if they had been similarly situated, the evidence shows that Mr. Dargan also left early on a daily basis, quashing any inference that Mr. Rossi's comparative strictness with Appellant was based on gender. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645–46 (3d Cir. 1998) (evidence that some people of a certain race or sex are treated poorly and others are not undermines inference that treatment was motivated by a protected characteristic). Appellant faces the same problem with his claim that Mr. Rossi chose to investigate his outside employment based on sex. Both Mr. Dargan and Ms. Day also disclosed outside employment, but Mr. Rossi did not investigate either of them. Under these circumstances, a reasonable juror could not infer that Mr. Rossi investigated Appellant's outside employment because of his sex. Therefore, the district court did not err in granting summary judgment to Appellee on Appellant's disparate treatment claim.

Appellant's retaliation claim is similarly ill-supported. To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (citations omitted). Raising a complaint regarding a practice that an employee believes in good faith to be discriminatory is clearly protected conduct. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d

Cir. 1996). To be sure, Appellant raised the issue of Ms. Washington's, Chambers', and Hill's absences from the courtrooms with Mr. Rossi. He also complained that Ms. Washington and Ms. Chambers were treating him abusively. He did not, however, ever raise a complaint that he thought he was being treated unfairly based on his sex. *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 195 (3d Cir. 2015) (general complaints of unfair treatment not tied to a protected class do not constitute protected activity). Therefore, the district court correctly concluded that Appellant produced no evidence that he engaged in protected activity.

Furthermore, the district court was correct that Appellant did not produce sufficient evidence for a jury to conclude that his complaints were causally connected to his termination. The record shows that the last complaints Appellant made were in June and July of 2014, three months before his termination in October. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) ("[W]e believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.") (citations omitted). The events are simply too temporally attenuated for a reasonable jury to conclude that the termination was based on retaliation. The district court did not err in granting summary judgment on this claim.

**IV**

For the foregoing reasons, we will affirm the district court.