**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3118
_____

MELISSA CHINERY,

Appellant

v.

AMERICAN AIRLINES

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-02697)
District Judge:  Hon. Eduardo C. Robreno

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2019

Before: SHWARTZ, KRAUSE, FUENTES, *Circuit Judges*.

(Filed: July 25, 2019)

_____

OPINION[**]

_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Melissa Chinery, a flight attendant for American Airlines, alleged that several fellow flight attendants posted offensive remarks about her on Facebook, and that American failed to adequately investigate those claims. Chinery brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951–963. The District Court granted American's motion for summary judgment on all claims, and Chinery appealed the dismissal of her hostile work environment claim.[1] For the following reasons, we will affirm the judgment of the District Court.

## I. Background

Chinery worked as a flight attendant for American based out of Philadelphia. Like all American flight attendants, she is represented by the Association of Professional Flight Attendants union ("the Union"). In November 2014, she ran for presidency of the Union's Philadelphia local chapter based on her opposition to the Union's collective bargaining

---

[1] Chinery's complaint raised these under both state and federal law. The District Court dismissed Chinery's state law claim since she failed to file a complaint with the Pennsylvania Human Relations Commission before filing in federal court. *See Chinery v. Am. Airlines*, No. 16-2697, 2018 WL 4055308, at *3 n.3 (E.D. Pa. Aug. 27, 2018); *see Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013) (citing Pennsylvania Human Relations Act) (concluding that a plaintiff's claim under the Pennsylvania Human Relations Act was time-barred because an administrative complaint was not filed with the Pennsylvania Human Relations Commission within 180 days). Even if the Court considered her state law claims, the outcome would be unchanged because "[c]laims under the [Pennsylvania Human Relations Act] are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Finally, Chinery did not address her state law claim, her Title VII disparate treatment claim, or her retaliation claim on appeal. Any arguments relating to those claims are therefore waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

agreement with American. She ultimately lost that election to the incumbent chapter president, who supported the agreement.

Chinery claims that a large group of American flight attendants, and four specific flight attendants, harassed her during and after the election campaign through posts they made to several Facebook groups, including a group called Wingnuts. Wingnuts's membership is composed primarily of American flight attendants based out of Philadelphia who use the page to communicate about work-related issues such as scheduling, layovers, and flight operations. American did not create the Wingnuts Facebook group and does not monitor it. Chinery was initially a member of Wingnuts, but she left the group shortly after starting her campaign, allegedly due to the harassment, which included:

- One flight attendant, who made negative comments towards those opposed to the Union contract, posted a picture of a broken record on Wingnuts. Chinery believed that the picture was an immediate reaction to something she posted on Facebook and was in response to the complaints she made to American's human resources department about him.

- During the campaign, a second flight attendant posted, "[T]his is war. [The incumbent union leaders] are my friends. If you f**k with my friends you f** with me and I don't like being f**ked with :(." (asterisks in original).[2] Chinery interpreted this post as a personal threat since it referenced her campaign.

- A third flight attendant made multiple harassing posts: (1) in response to a post about the campaign, he wrote "it's your cunstitutional [sic] right to vote NO [to the Union challengers]";[3] (2) he mocked her use of flashcards to study the Union contract and then wrote "[t]old ya I can't cunt [sic] to potato," which Chinery contends was an offensive reference to her gender;[4] (3) he wrote posts calling those opposed to the collective bargaining agreement "cavalier harpies" and "shrews of misinformation," adding "[h]ave any of them LOOKED in a mirror? Tuck your shirt in fat ass . . . Fix your hair . . . How bout [sic] a tie? A little

---

[2] A. 46; *see also* A. 54.
[3] *Id.*
[4] A. 47, *see also* A. 54–55.

3

lipstick?";[5] (4) he posted a picture of a "bedazzled" vagina, which Chinery believed was directed at her friend for defending Chinery on Facebook;[6] (5) according to Chinery, he posted a picture of the Wicked Witch of the West with the caption "I don't have time for basic bitches," which she argues was about her.[7]

- About nine months after the election ended, Chinery was ordered to attend a disciplinary meeting based on allegations that she had taken a video of one of American's vendors without permission.[8] The meeting was rescheduled, and after a fourth flight attendant learned about the delay, he wrote on his personal Facebook page, "HOLY SHIT! I knew it!! Flipper has NOT had her meeting yet!"[9] Chinery claims that "Flipper" is a derogatory term and that the comment was about her.

Chinery complained about these posts to American's human resources department. Although there was an investigation, it was ultimately closed after the investigator determined that her claims were meritless.[10] Chinery claims that the investigator failed to adequately address her concerns and that American could have enforced its social media policy against the flight attendants at issue but chose not to.

Based on these alleged failures, Chinery filed a complaint before the District Court, raising disparate treatment, hostile work environment, and retaliation claims under federal and state law. American moved for summary judgment, and the District Court granted the motion on all of Chinery's claims. With respect to her hostile work environment claim,

---

[5] A. 142.

[6] A. 98.

[7] A. 54. The District Court, however, could not locate evidence of this image in the record. *Chinery*, 2018 WL 4055308, at *2 n.1.

[8] Ultimately, Chinery was cleared of wrongdoing and was not disciplined.

[9] A. 49; *see also* A. 57.

[10] Before American closed its investigation, Chinery filed a complaint with the Equal Employment Opportunity Commission, which was also "unable to conclude that the information obtained establishes violations of the statutes," and determined that American was required to take "[n]o action." S.A. 17, 19.

4

the Court concluded that no reasonable trier of fact could find that the Facebook posts were "so objectively severe or pervasive that [they] would unreasonably interfere with an employee's work performance."[11]  Chinery timely appealed.

## II. Standard of Review[12]

We review the District Court's grant of summary judgment *de novo*, making all reasonable inferences in favor of the nonmoving party.[13]  Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law,[14] and we may affirm the grant of summary judgment on any basis supported by the record.[15]

## III.  Discussion

A *prima facie* case of hostile work environment under Title VII contains the following elements: (1) intentional discrimination based on sex; (2) severe or pervasive conduct; (3) a detrimental effect on the plaintiff; (4) a detrimental effect on a reasonable person in similar circumstances; and (5) the existence of *respondeat superior* liability.[16]  A court must analyze the alleged harassment by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

---

[11]  *Chinery*, 2018 WL 4055308, at *5.

[12] The District Court had federal question jurisdiction over Chinery's Title VII claims under 28 U.S.C. § 1331, and supplemental jurisdiction over her state claims under 28 U.S.C. § 1367.  We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

[13] *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013).

[14] Fed. R. Civ. P. 56(a).

[15] *See Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

[16] *Mandel*, 706 F.3d at 167.

interferes with an employee's work performance.'"[17]  The discriminatory "conduct must be extreme [enough] to amount to a change in the terms and conditions of employment."[18] Unless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim.[19]

Under this standard, Chinery makes three attempts to support her claim that the complained-of conduct constituted severe or pervasive harassment.[20]  None are availing.

First, Chinery argues that Facebook comments are inherently pervasive because social media posts "are public and endure."[21]  But she does not cite to any legal authority suggesting that permanence alone is enough for a reasonable trier of fact to conclude that the posts were so extreme as to amount to a change in the terms and conditions of employment.[22]  We therefore find no support for such a proposition.

Second, Chinery claims that the posts constituted severe harassment because they were threatening, inappropriate, and/or derogatory.  We disagree.  The conduct at issue

---

[17] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[18] *Id.* at 788; *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (reiterating that for an atmosphere of harassment to be actionable, the conduct must be sufficiently severe or pervasive that it "alter[s] the conditions of the victim's employment" and creates an "abusive working environment").

[19] *Caver*, 420 F.3d at 262–63; *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (noting that "an extreme isolated act of discrimination" may create a hostile work environment).

[20] Because we agree with the District Court that the severe or pervasive element is not met, we need not address the additional questions raised by Chinery's claims—including whether the alleged harassment was due to her gender or occurred in her work environment.

[21] Appellant's Br. at 25.

[22] Further, in at least one instance, the allegedly harassing Facebook post was deleted within minutes.

here included posts containing insulting photographs, posts referring to Chinery and her supporters by using derogatory language, and a post warning that the author believed he was being "f\*\*ked with" by those campaigning against the Union incumbents.[23] Chinery relies on out-of-circuit cases to support her claim that sporadic instances of harassment can constitute severe or pervasive conduct; in each case, though, the conduct was objectively more serious in kind than the Facebook posts at issue here.[24] Although some posts are offensive, they constitute only "offhand comments[] and isolated incidents" that are insufficiently extreme to amount to an objective change in the terms and conditions of employment.[25]

Finally, Chinery claims that American's investigation into her claims was not adequate and that American failed to enforce its social media policy, and this made the conduct severe. While these alleged failures might have some bearing on the question of whether *respondeat superior* liability may be attributed to American, they do not in themselves constitute severe or pervasive conduct. Put simply, Chinery does not show how American's shortcomings caused a material change in the terms and conditions of her

---

[23] A. 46, 54.

[24] *See, e.g.*, *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 398–401 (1st Cir. 2002) (holding plaintiff provided sufficient evidence of severe or pervasive harassment where plaintiff's co-worker followed her home, broke into her house, lurked about her windows, and massaged her foot at a work pool party); *Parrish v. Sollecito*, 249 F. Supp. 2d 342, 347–50 (S.D.N.Y. 2003) (denying defendants' motion for summary judgment where plaintiff's co-worker groped her multiple times at a funeral reception); *Espinoza v. Cty. of Orange*, No. G043067, 2012 WL 420149, at \*3–4, \*7 (Cal. Ct. App. Feb. 9, 2012) (affirming a finding of severe or pervasive harassment where coworkers engaged in in-person mocking at work, keyed plaintiff's car, and sabotaged his work equipment).

[25] *Faragher*, 524 U.S. at 788.

7

employment.[26]  Rather, any failure to investigate or discipline the flight attendants merely "preserved the very circumstances that were the subject of the complaint."[27]

Therefore, we agree with the District Court that Chinery failed to show that the alleged conduct, viewed objectively, was severe or pervasive.  As a result, there can be no genuine issue of material fact, and American is entitled to summary judgment.

## IV.  Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to American Airlines.

---

[26] *See id.* at 788; *see also Maldonado-Cátala v. Municipality of Naranjito*, 876 F.3d 1, 11 (1st Cir. 2017) ("[The plaintiff] does not explain how her daily work life was impacted by her superiors' failure to investigate the Facebook posts . . . .  [W]ithout more, a jury could not reasonably view the lack of follow-through as on-the-job harassment that altered her working conditions."); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (holding that the failure to investigate an employee's complaint does not contribute to nor constitute a hostile work environment).

[27] *Fincher*, 604 F.3d at 724.