**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2340
_____

DAVID FITZGERALD,
                                        Appellant

v.

NATIONAL RAILROAD PASSENGER CORPORATION, (AMTRAK)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:21-cv-05355)
District Judge:  Honorable Nitza I. Quiñones Alejandro

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 7, 2024
Before:  SHWARTZ, RESTREPO, and FREEMAN, <u>Circuit Judges</u>

(Opinion filed: February 26, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

David Fitzgerald, proceeding pro se, appeals from the District Court's grant of summary judgment to his former employer, the National Railroad Passenger Corporation ("Amtrak"), in this employment discrimination and retaliation action. We will affirm.

I.

Fitzgerald, who is African-American, was hired by Amtrak in 2009, and worked as a Building and Bridges (B&B) Inspector on the repair and restoration of the façade of 30th Street Station in Philadelphia, a project which took place from approximately 2016 to 2019. (ECF 19, at 1; ECF 53-5, at 44 of 228.) After receiving an anonymous letter containing allegations of wrongdoing, Amtrak's Office of Inspector General ("OIG") opened an investigation into potential unethical and criminal behavior by an Amtrak Project Manager, Ajith Bhaskaran, who was Fitzgerald's supervisor. (ECF 53-10, at 2 of 12.) That investigation revealed evidence that Fitzgerald and the Lead Industrial Hygienist on the project, Timothy Froehlig, potentially violated Amtrak policies by accepting gifts from Thomas McLaughlin, the project manager for Mark 1 Restoration, the company that was awarded the 30th Street Station repair and restoration contract. (ECF 53-10, at 3 of 12.) As a result, OIG opened a separate investigation into Fitzgerald and Froehlig. (Id.)

During the investigation, Fitzgerald admitted to OIG agents that he used McLaughlin's personal credit card to purchase a $900 furnace for a church where Fitzgerald served as pastor. (Id.; ECF 53-5, at 55 of 228.) Fitzgerald also disclosed that he went shopping with McLaughlin and Bhaskaran, one of whom bought him a suit and shoes for approximately $420. (ECF 53-10, at 3-4 of 12.) An expense report obtained by

2

OIG indicated that Mark 1 reimbursed McLaughlin for the cost of the suit and shoes. (ECF 53-8, at 10-11 of 15.)  The OIG report concluded that Fitzgerald violated Amtrak's Conflict of Interest Policy and its Code of Ethics and Standards of Behavior.  (ECF 53-10, at 7-11.)

Thereafter, Amtrak charged Fitzgerald with violating its policies by "dishonestly accept[ing] gifts and favors from … [Mark 1] contractors; thereby taking advantage of his business relationship with Mark 1, to personally benefit himself."  (ECF 53-7, at 36 of 44.)  Fitzgerald was advised that if found culpable, he faced termination of employment.  (Id.)  Pursuant to a collective bargaining agreement between Amtrak and Fitzgerald's union, the case was heard by a hearing officer, who issued a written decision finding that the charges had been proved "based on the totality of the overwhelming and compelling evidence …."  (ECF 53-4, at 20-21 of 21.)  The matter was then sent to Amtrak management, which fired Fitzgerald.[1]  (Id. at 5-6.)  Fitzgerald appealed, and Amtrak's Labor Relations Department upheld the termination decision.  (ECF 53-7, at 38-44 of 44.)

Fitzgerald filed a pro se complaint, which he later amended, in the United States District Court for the Eastern District of Pennsylvania, bringing claims of race discrimination and retaliation against Amtrak under Title VII of the Civil Rights Act. See 42 U.S.C. § 2000e, et seq.  Amtrak filed a motion for summary judgment.  The District Court granted that motion, holding that Fitzgerald failed to make out a prima facie case of race discrimination or retaliation and that, in any event, he did not create a

---

[1] The Lead Industrial Hygienist, Froehlig, who is Caucasian, was also fired after Amtrak determined that he too accepted gifts from Mark 1.

genuine issue of material fact demonstrating that Amtrak's legitimate reasons for firing him were a pretext for discrimination. Fitzgerald timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for Amtrak. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, "there is 'no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citation omitted). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may affirm on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

We agree with the District Court that Fitzgerald did not put forth evidence that his termination occurred under circumstances that give rise to an inference of unlawful race discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam). To support an inference of unlawful discrimination, the employee generally must present evidence that the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See Radue v. Kimberly-Clark Corp., 219 F.3d 612 (7th Cir. 2000); see also Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327-28 (3d Cir. 2015). "The central focus of the *prima facie* case is always

4

whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo, 352 F.3d at 798 (internal quotation marks removed). Determining whether employees are similarly situated involves considering factors such as the employees' job responsibilities, their supervisors, and the nature of the misconduct. See Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009).

Fitzgerald identified four Caucasian Amtrak employees who he claimed were treated more favorably after violating Amtrak policies. According to Fitzgerald, Christopher Romano (B&B Inspector) and Barry Bond (Capital Construction Manager) received apparel with Amtrak logos, valued at over $200, from Mark 1, but were not disciplined. (ECF 19, at 3-4.) Fitzgerald also claimed that Thomas Chinski (Track Supervisor) and John Ciferni (B&B Inspector) committed various infractions but were given multiple chances before they were disciplined or terminated. (Id. at 5.)

As the District Court explained, however, these employees were not similarly situated to Fitzgerald. Although Romano and Ciferni were, like Fitzgerald, B&B Inspectors, neither engaged in conduct similar to Fitzgerald. Romano did not receive apparel from Mark 1. Instead, Romano, who was not implicated in the OIG investigation of Fitzgerald and Froehlig, received the apparel from Bhaskaran. (ECF 53-10, at 5 of 12.) Ciferni, who was fired from Amtrak, had been charged with unprofessional conduct, discrimination/harassment, and workplace violence. (ECF 53-6, at 4 of 80.) In addition, neither Bond nor Chinski were similarly situated comparators because they held different positions than Fitzgerald. See Mandel v. M & Q Packaging Corp., 706 F.3d 157, 170 (3d

5

Cir. 2013) (stating that "an employee who holds a different job in a different department is not similarly situated"). Moreover, although Bond, like Fitzgerald, was questioned about improperly obtaining apparel, Bond explained that he took a winter coat from a trailer after the 30th Street Station façade project had concluded. (ECF 53-10, at 5.) Fitzgerald, by contrast, was found to have accepted clothing from a Mark 1 contractor during the project. Chinski was charged with improperly logging time entries and accepted a 30-day suspension. (ECF 53-6, at 4 of 80); Reives v. Ill. State Police, 29 F.4th 887, 892 (7th Cir. 2022) (holding that employees were not similarly situated where they "engaged in different misconduct and were punished for violating different rules"). Because Fitzgerald failed to present evidence that similarly situated Amtrak employees outside his protected class were treated more favorably, or any other evidence giving rise to an inference of discrimination, he did not establish a prima facie case of race discrimination.[2]

## IV.

Fitzgerald also failed to establish a retaliation claim based on his assertion that he was fired for complaining that Amtrak employees discriminated against him based on his race. Under the burden-shifting framework established by McDonnell Douglas Corporation v. Green, Fitzgerald had the initial burden of establishing a prima facie case of retaliation. See 411 U.S. 792, 802 (1973). To establish a prima facie case, Fitzgerald

---

[2] Fitzgerald's race discrimination claim is also undermined by the fact that Amtrak fired Froehlig, a Caucasian employee who was also found to have improperly accepted gifts from McLaughlin during the 30th Street Station project.

must show that he engaged in Title VII-protected activity, that he suffered an adverse action, and that a causal nexus existed between the adverse action and protected activity. See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022). If Fitzgerald establishes a prima facie case, the burden shifts to Amtrak to "articulate some legitimate, nondiscriminatory reason" for his suspension and termination. See McDonnell Douglas, 411 U.S. at 802. Fitzgerald would then have an opportunity to prove by a preponderance of the evidence that the legitimate reason for his suspension and termination offered by Amtrak waa pretext. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

We agree with the District Court that Fitzgerald failed to establish a prima facie case of retaliation because he failed to establish a causal nexus existed between the adverse action and protected activity. He alleged that he complained of "racism/harassment" for years, including through ethics complaints, the last of which was made on September 22, 2020. (ECF 54, at 3-4, 28-30 of 177.) Fitzgerald was terminated on March 30, 2021. (ECF 53-5, at 227 of 228.) This gap of approximately six months is too long to establish temporal proximity. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (concluding in the context of a Title VII retaliation claim that "[a]lthough there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment").

Even if Fitzgerald could establish a prima facie case of retaliation, Amtrak

7

articulated a legitimate, nondiscriminatory reason for Fitzgerald's termination.  In

particular, Amtrak explained that Fitzgerald violated policies that prohibit employees

from accepting gifts from a person or entity that does business with Amtrak.[3]  (ECF 53-4,

at 20-21 of 21; ECF 53-5, at 209 of 228.)  Fitzgerald has not identified a material issue of

fact demonstrating that that reason was a pretext for discrimination.  To establish pretext

under the summary judgment standard, a plaintiff must either (1) offer evidence that

"casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so

that a factfinder could reasonably conclude that each reason was a fabrication," or (2)

present evidence sufficient to support an inference that "discrimination was more likely

than not a motivating or determinative cause of the adverse employment action."  Fuentes

v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).  Fitzgerald, however, relies on only his own

speculation and conjecture to demonstrate pretext, which is insufficient to defeat

---

[3] Fitzgerald complained that he was fired for violating policies that were not in place when he was hired in 2009.  Appellant's Br., at 13-15 of 98.  Amtrak concedes that it updated its policies throughout Fitzgerald's employment, but accurately notes that the substance of its policies concerning conflicts of interest has essentially remained the same.  Appellee's Br., at 36-37 of 42.  Indeed, the policy that Fitzgerald received and signed at the start of his employment prohibited asking for or soliciting a tip or gratuity from a vendor.  (ECF 53-5, at 17-18, 124, 129 of 228.)

Fitzgerald also argued that Amtrak did not follow its Agreement Employee Discipline Policy, which he claims requires that termination decisions be made by the Vice President of Labor Relations only after progressive discipline is used.  But as Amtrak explains, Appellant's Br., at 16-18 of 98, although the Vice President of Labor Relations is responsible for interpreting and administering the Policy, Amtrak's managers are responsible for executing the policy.  (ECF 53-9, at 2 of 8.)  In addition, although the Policy permits progressive discipline, it also provides that a violation "may be deemed so serious as to warrant termination of employment upon a first offense."  (Id. at 7-8.)  Amtrak found that Fitzgerald's violation involved dishonesty, which the Policy indicates may warrant termination.  (Id. at 8.)

summary judgment.  See Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  And we conclude that Amtrak's proffered reasons for terminating Fitzgerald were neither "weak, incoherent, implausible, [n]or so inconsistent" that a reasonable juror could find them unworthy of credence.  See Sarullo, 352 F.3d at 800.  Thus, no reasonable juror could conclude that retaliation for engaging in protected activity was the likely reason for the adverse employment action.

## V.

For the foregoing reasons, we will affirm the District Court's judgment.